**ARCHER DANIELS MIDLAND COM-PANY, a Delaware corporation, Plaintiff,**

v.

**RALSTON PURINA COMPANY, a Missouri corporation, Defendant.**

**Civ. No. P–3102.**

United States District Court,
S. D. Illinois, N. D.

Jan. 13, 1971.

Clifford E. Schneider, Peoria, Ill., Alan L. Potter, Washington, D.C., Frank Fowle, Chicago, Ill., for plaintiff.

Harold G. Lindholm, Peoria, Ill., Peter P. Price, Grand Rapids, Mich., for defendant.

## OPINION AND ORDER

ROBERT D. MORGAN, District Judge.

This cause comes before the court on defendant's motion to dismiss under 12(b) (3) of the Federal Rules of Civil Procedure for lack of venue under 28 U.S.C. § 1400(b). In the complaint, the plaintiff alleges that the defendant has infringed its patent as provided under the patent laws of the United States, 35 U.S.C. §§ 271 and 281. It has long been held that section 1400(b) is the sole and exclusive provision controlling venue in patent infringement actions. See Schnell v. Peter Eckrich & Sons, Inc., 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); and Fourco Glass Co. v. Transmirra Products Corp., 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). The disposition of this motion therefore, depends upon the application of section 1400(b) to the facts before the court.

Section 1400(b) of Title 28, United States Code, provides:

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."

It is not alleged nor argued that the defendant, a Missouri corporation, "resides" in the Southern District of Illinois; and it is not disputed that the defendant does have several regular and established places of business within the district. The question before the court, then, is whether the defendant has committed any acts with regard to the accused infringing product within the district which would constitute infringement.

The infringement of a patent is defined in 35 U.S.C. § 271, with the relevant portion for purposes of this question being within subsection (a) as follows:

" * * * whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent."

It is not contended by the plaintiff that the defendant is making or using the patented invention within this district, nor do any facts in the record so indicate. Thus, the issue becomes whether, for venue purposes, the defendant was selling within this district any product which the plaintiff accuses of infringing its patent.

There has been a substantial question raised by the parties with regard to the time period to which the court may look for acts of selling by the defendant corporation in determining whether venue here is proper under section 1400(b). The defendant contends that since the patent was issued on January 6, 1970, and the complaint herein was filed at some unknown hour on January 7, 1970, neither day should be included and the critical time period is infinitesimal, being the non-existent period between

those two days; and that, thus, venue cannot be proper here. The plaintiff contends, on the other hand, that all of January 6 and 7, 1970, should be included in the critical period, and if the court finds that the defendant was selling the accused product in this district during these two days, then venue is proper here.

The facts presented on this issue are before the court through the complaint, taken as true for purposes of the motion, except as specifically controverted and in the form of answers and amended answers to various interrogatories, answers to requests to admit facts, and affidavits of several of defendant's employees.

■ The record clearly indicates that the patent was issued on January 6, 1970. The defendant, however, contends that January 6 should not be included in the critical time period on the basis of a tax court decision, Standard Oil Co. v. Commissioner of Internal Revenue, 43 B.T.A. 973 (1941), aff'd 129 F.2d 363 (7th Cir. 1942). In that case, the Board of Tax Appeals was interpreting the meaning of the patent "term," as found in 35 U.S.C. § 154, for income tax depreciation purposes. The patent there was issued on January 7, 1913, and the tax board held that the patent had 7, not 6, days to run in 1930 for depreciation computation purposes. The defendant here argues that if the patent is held effective and enforceable on the day that it is issued, the court will be extending the patent rights beyond the 17-year term provided for in 35 U.S.C. § 154. This holding of the tax board was not challenged before the Court of Appeals for the Seventh Circuit and was not considered in its opinion. It is the opinion of this court that the defendant's argument is not supported by the *Standard Oil* decision. While it is common in the law to exclude the first day of a time period and to include the last in computing [*See* Rule 6(a) F.R.Civ.P. and 86 C. J.S. Time §§ 13(10)-(16)], it would indeed be an anomaly to hold that the rights under a patent did not arise on the day that it was issued. This court holds that the monopoly of a patent arises on the day it is granted and that it is enforceable on that date against any infringers. *See* Eterpen Financiera Sociedad de Responsabilidad Limitada v. United States, 124 Ct.Cl. 20, 108 F.Supp. 100 (1952), cert. denied, 346 U.S. 813, 74 S.Ct. 22, 98 L.Ed. 340 (1953); Tepper v. Ross, 25 F.Supp. 92 (D.C.Mass. 1938). Thus, the period to which the court must look for acts of selling includes January 6, 1970.

■ Next for consideration is the dispute on whether the day of filing of the complaint, January 7, 1970, should be included in the critical time period. The defendant argues that the plaintiff has not sustained its burden of showing that any sales of the accused infringing product took place prior to the filing of the complaint on that date. It is well settled that the plaintiff does have the burden of showing proper venue under 1400(b). Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1184 (7th Cir. 1969).

■ ■ Also, a cause of action must be tested as of the time of the filing of the complaint and acts of infringement occurring subsequent to its filing cannot cure a complaint filed when no other acts of infringement had occurred. Knapp-Monarch Co. v. Casco Products Corp., 342 F.2d 622, 627 (7th Cir. 1965), cert. denied, 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73 (1965); Minnesota Mining & Mfg. Co. v. Plymouth Rubber Co., 178 F.Supp. 591, 595 (N.D.Ill.1959). Thus, where the court must consider acts of the defendant in an effort to determine whether there is proper venue in the district, it can generally not look to acts of selling subsequent to the complaint to establish venue with the court.

The complaint in this case does not bear any indication of the exact time of its filing. The filing procedure in the office of the clerk of this court is to stamp only the date of filing upon documents and not the exact time unless requested to do so. It seems somewhat ri-

diculous to this court to quibble over the exact hour or minute when a complaint was filed under the circumstances which exist here.

It has been stated that:

" * * * the general rule in judicial proceeding is that fractions of a day are not to be regarded, and all transactions on the same day are to be regarded as occurring at the same instant time. The exception to the rule is that when the application of the general principle would result in manifest injustice. If so, the exact hour or minute at which acts were done may be shown in order to prevent a great mischief or inconvenience." In Re Susquehanna Chemical Corp., 81 F.Supp. 1, 9 (W.D.Pa.1948). *See also,* 86 C.J.S. Time §§ 13(10)-(16), 16.

■ Under the circumstances hereinafter discussed, the application of the general rule would not result in any injustice which is manifest. It appears thoroughly sound and just to regard the 7th day of January, 1970 as an indivisible unit of time for purposes of venue of this action. Acts which take place on the same day as the filing of the complaint may and should be considered in determining whether the defendant committed any infringing acts for purpose of venue under 1400(b). *See* Latini v. R. M. Dubin Corp., 90 F.Supp. 212 (N. D.Ill.1950). January 7 is therefore included in the critical time period for the determination of venue of this case; and the critical period is established as January 6 and 7, 1970.

■ It next becomes the duty of the court to determine the activities of the defendant with regard to the accused product within this district during the two-day period. Whether the defendant's activities within this district are sufficient to subject it to venue here is a question of fact. Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1184 (7th Cir. 1969). In determining this question of fact, the court realizes that activities of the defendant with regard to the accused product which are outside the critical period are generally irrelevant. There is some exception to this general rule, however, for these activities may be relevant for reasonable inferences to understand what the defendant's activities during the critical time period probably were.

■ The record before the court indicates that the accused infringing product in this case is sold under the name of "Chuck Wagon." It also reveals no completed sales of this product within the critical two-day time period in this district. Of course, if there were any such sales, the court's inquiry would stop because the law is clear that one minor completed sale is sufficient to confer venue. James P. Marsh Corp. v. United States Gauge Co., 129 F.2d 161 (7th Cir. 1942); Latini v. R. M. Dubin Corp., 90 F.Supp. 212 (N.D.Ill.1950). Although at one time a completed sale was required within the district to support venue under 1400(b), that requirement is moribund. Union Asbestos & Rubber Co. v. Evans Products Co., 328 F.2d 949 (7th Cir. 1964); Watsco, Inc. v. Henry Valve Co., 232 F.Supp. 38 (S. D.N.Y.1964). In the *Union Asbestos* decision, the test applied was whether there was a sufficient degree of selling within the district by the defendant to constitute acts of infringement for venue purposes. Union Asbestos & Rubber Co. v. Evans Products Co., *supra* at 952. The court, there, specifically held that a completed sale was not required to support venue, and that continuous solicitation plus two demonstrations of the product by the defendant was sufficient under 1400(b). Now, consideration of the facts in the record is no longer limited to a search by the court for a single completed sale. The record may be viewed as a totality of facts either indicating that the defendant was or was not selling the accused product to a sufficient degree within the district to support venue there.

■■ This court holds that defendant's sales activities within the Southern District of Illinois, during January 6 and 7, 1970, were sufficient to constitute

acts of infringement for venue purposes. The following recitation and summary of facts from the record, in the opinion of this court, clearly show a degree of sales activity conducted by the defendant in this district during the critical period adequate to place venue here.

Chuck Wagon is a relatively new product and fourteen counties [1] of Illinois within the Southern District have been a part of the defendant's official test market area for it from some time in 1966 to the present. These counties were a part of the official test market during the critical time period. Chuck Wagon has been commercially manufactured by the defendant since early in 1966, and only at its plant in Davenport, Iowa. During January, 1970, the defendant never had less than 9000 pounds of Chuck Wagon inventory stored at the Federal Warehouse in East Peoria, Illinois, which is within this district. This inventory was available for sale by defendant and several withdrawals were made from it during that month. Some quantity of Chuck Wagon was on hand and for sale during all of January, 1970 at its facilities in Bloomington, Illinois, which is also in this district. Whether there was any inventory of Chuck Wagon on hand at the defendant's five Checkerboard retail stores, within the district, is not clear from the record.

Several products, including 100 pounds of Chuck Wagon, were picked up, as agreed, on January 7, 1970, by De-Marlie's Feed Mill, at the defendant's mill in Bloomington, Illinois. Both the customer's place of business and the mill are located in this district. The order for the goods was placed on January 5, 1970, and the record indicates that the defendant considered itself bound at that time. It is argued by the defendant that under the laws of Illinois the sale contract was technically complete on January 5, 1970, when the order was placed and accepted. *See* Ill.Ann.Stat. ch. 26, §§ 2–401(3) (b), 2–501(a) and Comment 5 to § 2–501(a) (Smith-Hurd 1963). The fact remains, however, that a sales contract made within the Southern District of Illinois was performed here during the critical time period. The delivery of a product pursuant to a sales contract is a vitally important part of that sale.

In addition to this sales activity, it also appears from the record that on January 6 and 7, 1970, the defendant instructed the Federal Warehouse in East Peoria, Illinois to release 864 pounds of Chuck Wagon for shipment to the W. A. Jordan Company in Galesburg on January 12, 1970. Both the warehouse and the customer's place of business are located within this district. The inventory was located here for distribution to buyers in this district and an order for the release of such inventory was given during the critical time period. These acts of the defendant are acts performed in aid of its selling efforts within this district. They are an important part of the defendant's distribution and selling program of Chuck Wagon in this district.

Finally, on January 6, 1970, 3600 pounds of Chuck Wagon were shipped "Rush" from a warehouse in St. Louis to a customer, the Tri-City Grocery Company, in Granite City, Illinois. St. Louis is not but Granite City is located within this district. Although there is no positive evidence in the record that the delivery was made to the customer on January 6 or 7, it is highly probable that such shipment was received within the critical period because Granite City is a short distance from St. Louis. Again, the sale was technically made under the Commercial Code on January 6, 1970, when and where the goods were turned over to the carrier for delivery to the customer within Illinois.[2] This lat-

1. These counties are Adams, Pike, Scott, Greene, Calhoun, Jersey, Macoupin, Montgomery, Madison, Rock Island, Mercer, Henry, Henderson and Bond.

2. The record shows that the sales contract only required the defendant to send the goods to the buyer, but did not require him to deliver them at the destination of the buyer's facilities in Granite City.

ter shipment alone would probably not be sufficient to subject the defendant to venue here, but when it is viewed along with the other sales activities, it does raise the degree of Chuck Wagon selling within the Southern District of Illinois at the critical time.

In summing up the above facts, a large portion of this district was part of the official test market for the accused product. Substantial amounts of inventory of the product were located here for sale and delivery within the Southern District of Illinois. One small delivery from such inventory was actually made during the critical period. A large delivery was ordered during such period to be made from the inventory on hand at a public warehouse in the district. Both deliveries were made to customers whose businesses were within this district. Finally, a sale was completed outside the district, to a customer within the district, and most likely the Chuck Wagon sold was received by such customer during the critical period.

It is the opinion of this court that these facts are adequate to conclude that there was sufficient specific sales activity within the district and within the critical period to properly subject the defendant to venue here.

In addition to the above facts, however, the court is of the opinion that before, during, and after the critical period the defendant also was conducting a continuous program of sales solicitation for Chuck Wagon within the Southern District. Defendant's initial answers to interrogatories are sworn to be true to the best present knowledge, information and belief of an assistant corporate secretary. These answers, in part, generally state that the Consumer Products Division, and the Agricultural Products Division of the defendant, along with some independent brokers, had been selling, promoting and soliciting orders for Chuck Wagon within this district. They also state that retail sales were made from its Checkerboard stores, and, generally, that Chuck Wagon was promoted in the district by television advertising, handouts, point of sale displays and pack coupons for consumers.

In amended answers to the same interrogatories, however, sworn to in the same manner and by the same assistant secretary, the defendant asserts that only the Consumer Products Division solicited orders for Chuck Wagon, along with private brokers. Oddly enough, these amended answers, along with an affidavit of a Consumer Products Division sales manager of defendant, indicate that during December, 1969 and January, 1970, the defendant's salesmen and the private brokers had been requested to discourage the purchase of Chuck Wagon because it was in low supply and customers' demands could not be met. In that affidavit sworn assertions are also made which indicate that all sales or solicitation activity of defendant's salesmen on Chuck Wagon did, in fact, stop. Further, it is generally stated in these sworn documents that no advertising or promotion was conducted in the Southern District during the latter part of 1969 and January, 1970 because of the inadequate supply of Chuck Wagon. It is further stated by the defendant that it knows of no literature available, nor point of sale promotion done, nor any other advertising done covering the accused product on or around January 6 and 7, 1970.

Summarized, the amended answers to interrogatories along with that affidavit indicate that all solicitation and advertising with regard to Chuck Wagon ceased during the months of December, 1969 and January, 1970 because of an inadequate supply. These statements, however, become somewhat incredible in view of the uncontroverted admission in the record that during the month of January, 1970, 69.8 tons of Chuck Wagon were shipped into the Southern District of Illinois. The record shows that this tonnage is around one and one-half times the amount shipped into this district during each of the three preceding months and during the month immediately following. These shipments were presumably not made simply to accumu-

late the product, and it is not contended that any tendered purchases from this stock were refused. Also, it is specifically admitted in the record that during the last three weeks in January, the defendant caused nine television commercials per week to be aired, reaching viewers within this district from stations located within and outside this district. Based on these facts in the record, the court suspects that the supply of Chuck Wagon was not in quite such short supply in this district as the defendant would have the court believe, and that some continuous sales program with regard to Chuck Wagon was being conducted by defendant throughout the critical period within this district.[3]

Such continuous sales and shipment program, along with the other specific activities of the defendant with regard to the accused product, clearly shows a sufficient degree of selling within the district to subject it to this court's venue. The court is mindful that the venue statute is specific and it is not one of those vague principles that is to be given a liberal construction in the interest of some overriding policy. Grantham v. Challenge-Cook Bros., Inc., 420 F.2d 1182, 1184 (7th Cir. 1969). The court is also mindful, however, that "the technicalities of sales law should not control whether defendant's degree of [selling] conduct within the district was sufficient to constitute 'acts of infringement' for venue purposes." Union Asbestos & Rubber Co. v. Evans Products Co., 328 F.2d 949, 952 (7th Cir. 1964). The facts remain that several counties in this district were designated as part of the official test market for the accused product. There was a substantial amount of inventory held in the district for sale within the district. There was at least one delivery made from such inventory to a customer within the district, and an

instruction made to a warehouse within the district by the defendant for delivery at a future date to a customer within the district. There was one sale consummated outside the district, with "Rush" delivery ordered, to a customer located within the district. There was a great deal of the accused product shipped into the district during the month of January, 1970. These facts, supported by the conclusion of the court that some continuous solicitation for sales was being carried on throughout the critical period, are clearly sufficient to properly place venue here under section 1400(b).

For the above mentioned reasons and in the considered judgment of this court, the present motion must be, and hereby is, denied, and the defendant is hereby ordered to file its answer or otherwise plead to the complaint herein with 30 days from the date of this order.

---

3. The record before the court does not disclose why plaintiff did not purchase a small box of Chuck Wagon at a Checkerboard store in this district on January 7, 1970, before filing its complaint, or whether it tried to do so and failed to find it for sale. Such a purchase would have saved all concerned a good deal of time and effort. The facts before the court clearly indicate, however, that such a purchase could have been made.