**Jerome H. LEMELSON, Plaintiff,**

v.

**AMPEX CORPORATION and Illinois Bureau of Investigation, Defendants.**

**No. 72 C 2425.**

United States District Court,
N. D. Illinois, E. D.

Jan. 4, 1974.

On Motion to Reconsider March 19, 1974.

Leonard S. Knox, Chicago, Ill., Jerome M. Berliner and Robert C. Faber, New York City, for plaintiff.

John F. Flannery, Fitch, Even, Tabin & Luedeka, William J. Scott, Atty. Gen., State of Ill., and Richard Robin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

This matter comes before the Court on the motions of defendants, Ampex Corp. (Ampex) and the Illinois Bureau of Investigation (IBI), to dismiss the complaint, or in the alternative, to sever and stay the action against IBI and transfer the action against Ampex to the Northern District of California. For the reasons set forth below, the motions are denied.

This case involves an alleged infringement of plaintiff Jerome Lemelson's (Lemelson) patent on a magnetic recording system utilized by defendants in a video document storage and retrieval system. It is alleged that Ampex, a California corporation with its principal place of business there, and which has a regular established place of business in this district, manufactured the video system utilizing Lemelson's invention. It is further alleged that IBI, an agency of the State of Illinois, headquartered in this district, bought and used the video system. IBI moved to dismiss the complaint based on its sovereign immunity, the inapplicability of the patent laws to state governments, and a lack of proper venue in this Court. Ampex moved to dismiss based on lack of venue; or in the alternative, to have this cause severed and transferred to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I.

■■■ The basic claim made by the IBI is that sovereign immunity and the Eleventh Amendment bar an action against a state, or its agencies, for patent infringement.[1] However, the Court finds that the IBI is liable for violations of the patent law, notwithstanding the fact that it has not expressly consented to be sued.[2]

---

1. When suing a state agency, where liability will fall upon the state, its immunity is extended to cover its agencies. See, e. g., S. J. Groves & Sons Co. v. New Jersey Turnpike Authority, 268 F.Supp. 568 (D.N.J. 1967).

2. The State of Illinois has not in its statutes expressly waived sovereign immunity in patent cases. The Illinois constitutional and statutory scheme of waiver of sovereign immunity has recently undergone some modification. The Illinois Constitution of 1970 abolished sovereign immunity except to the extent the General Assembly saw fit to reestablish it. Ill.Const. of 1970, Art. XIII, § 4, S.H.A. The General Assembly resurrect-

ed the state's entire immunity save one exception. Ill.Rev.Stat. ch. 127, § 801 (1972). That exception provides for exclusive jurisdiction in the Illinois Court of Claims over various types of cases, including tort cases. Ill.Rev.Stat. ch. 37, § 439.8(d) (1972). Although a patent infringement case "sounds in tort," the Illinois Court of Claims could not have jurisdiction because of the vesting of exclusive jurisdiction over patent cases in the federal courts. See 28 U.S.C. § 1338(a). Alternatively, by vesting jurisdiction in the Illinois Court of Claims, the State of Illinois sought to make it the exclusive forum for actions against the state. Since the right of action is conditioned upon the availability of the Illinois Court of

The Eleventh Amendment provides that the federal judicial power does not extend to suits against a state by citizens of other states.[3] This amendment was passed after the decision in Chisholm v. Georgia, 2 Dall. 419, 1 L.Ed. 440 (1793), which permitted such suits. The amendment's purpose was to resurrect the common law concept of sovereign immunity. The bar against suits is not absolute, however. In Parden v. Terminal Ry. of Alabama, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), the Supreme Court enunciated the standards whereby consent to suit will be implied. A closer look at the *Parden* case would be beneficial here.

In *Parden,* a citizen of Alabama brought suit against a state of Alabama owned and operated railway under the Federal Employer's Liability Act (FELA). The railroad asserted that sovereign immunity and the Eleventh Amendment barred the suit. The Supreme Court held, however, that the state had consented to the suit and damages could be awarded. The Court determined that Congress, through its power to regulate interstate commerce, had created the cause of action. The Court then found that when the states had given to Congress the right to regulate interstate commerce, they had impliedly waived their right to sovereign immunity, since they had surrendered a portion of their sovereignty. *Id.* at 192, 84 S. Ct. 1207. Since Alabama chose to operate a railroad, it accepted amenability to suit under FELA. The Court further stated that waiver was a question of federal law. *Id.* at 196, 84 S.Ct. 1207.

In the present case, the applicability of the patent laws to the states would appear to have a firmer basis in federal law. Article 1, § 8 of the United States Constitution grants Congress the exclusive power to grant patents. Congress has enacted a complex statutory scheme to implement its power. 35 U.S.C. § 1 et seq. Congress has further provided for exclusive federal jurisdiction over patent cases. 28 U.S.C. § 1338(a). The entire structure of the patent laws is meant to provide a national, uniform system to provide the most meaningful protection for the inventor. Also, in granting to Congress the right to create exclusive patents, the states largely surrendered their sovereignty over patents. Furthermore, the patent act does not on its face exempt states from its operation. See 35 U.S.C. § 271(a).

Other rationales have been utilized in holding states liable for patent act violations. In Hercules, Inc. v. Minnesota State Highway Dept., 337 F.Supp. 795 (D.Minn.1972), the court held that the state agency could be enjoined from infringing a patent. The court reasoned that a patent was a property, and being property, could not constitutionally be taken without just compensation, as the Fourteenth Amendment, enacted subsequent to the Eleventh Amendment, mandates. See Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The court thus held that the state could be enjoined from committing an illegal act. But see Automobile Abstract & Title Co. v. Haggerty, 46 F.2d 86 (E.D.Mich.1931); Wm. C. Popper & Co. v. Pennsylvania Liquor Control Board, 16 F.Supp. 762 (E.D.Pa.1936). The court in *Hercules* refused to allow money damages because the state had not waived its tort immunity. See note 2, *supra.*

■■■■■ Other reasons exist for applying the patent laws to state governments. Governmental units have no authority to violate the patent laws, and when they do so, they act outside the scope of their authority. See May v. Board of Comm'r of Logan County, 30 F. 250 (Cir.Ct.N.D.Ohio 1887); May v.

Claims as a forum, and as that forum is not available here, immunity from suit is not waived for an action in federal court.

3. This immunity has been interpreted to preclude suits by a citizen against his own

state. See, *e. g.,* Parden v. Terminal Ry. of Alabama, 377 U.S. 184, 84 S.Ct. 1207, 12 L. Ed.2d 233 (1964); Hans v. Louisiana, 134 U. S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

Saginaw County, 32 F. 629 (Cir.Ct.E.D. Mich.1887); Reliance Constr. Co. v. Hassam Paving Co., 248 F. 701 (9th Cir. 1918). States have been held liable under the patent laws when they agreed to indemnify a supplier. See, e. g., Warren Bros. Co. v. Kibbe, 43 F.2d 582 (D.Or. 1925). In the present case, Ampex has agreed to indemnify IBI, within their original agreement. Although an indemnity agreement does not act as a waiver of sovereign immunity, it is an indication of IBI's belief as to the applicability of the patent laws to it. Cf. Hercules, Inc. v. Minnesota State Highway Dept., supra, at 802 of 337 F.Supp.; Powers v. Telander, 129 Ill.App.2d 10, 262 N.E.2d 342 (1970). Also, it should be remembered that the IBI ordered this machine specially, requesting various custom-made features. This indicates an involvement beyond a mere "over the counter" purchase. With allegedly active involvement in the infringement, it ill behooves the state to claim that it is a mere user of the product in its normal line of business. See Howell v. Miller, 91 F. 129 (6th Cir. 1898) (state liable under the copyright laws, per Harlan, J. sitting as Circuit Judge). Further, the allegedly unlawful taking is outside the scope of the state's authority and its immunity does not extend beyond its legitimate authority. See id. at 136.

*Parden, supra,* provides two other reasons why the patent laws are applicable to the state. The Court stated that:

"It would surprise our citizens, we think, to learn that petitioners [who in terms of *FELA* were just like other railroad workers] . . . must be denied the benefit of the Act simply because the railroad for which they work happens to be owned and operated by a State rather than a private corporation. It would be even more surprising to learn that *FELA* does make the [state owned railroad] . . . 'liable' to petitioners, but, unfortunate-

ly, provides no means by which that liability may be enforced."

377 U.S. at 197, 84 S.Ct. at 1215.

It would also surprise our citizens to learn that their exclusive right to a patent was not exclusive and that governmental units could infringe upon that right. But cf. Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). The Supreme Court in *Parden* further stated that:

"[S]uch a result [allowing a state immunity from *FELA*] would bear the seeds of a substantial impediment to the efficient working of our federalism. States have entered and are entering numerous forms of activity which, if carried on by a private person or corporation, would be subject to federal regulation. . . . In a significant and increasing number of instances, such regulation takes the form of authorization of lawsuits by private parties. To preclude this form of regulation in all cases of state activity would remove an important weapon from the congressional arsenal with respect to a substantial volume of regulable conduct. [Since Congress has not indicated any restrictions] in the exercise of its constitutional power, we see nothing in the Constitution to obstruct its will."

377 U.S. at 197–198, 84 S.Ct. at 1215–1216.

For like reasons, the Court believes that the IBI has no immunity from suit.

The next question is whether or not money damages can be obtained.[4] In *Hercules,* the court limited relief to an injunction. 337 F.Supp. at 798–800. This Court believes, however, that the IBI may be liable for any damages caused plaintiff by its actions. First, as demonstrated by *Parden,* where money damages could have been obtained, Congress has provided a means to regulate conduct and the state is not immune

4. Ampex has agreed to indemnify the IBI; however, the Court believes a discussion of the extent of liability of IBI is necessary because questions may later arise as to Ampex's possible inability to indemnify or renunciation of the agreement.

from that regulation. As the patent laws allow for recovery of damages, this needed element of regulation is not subject to a state's immunity. See 35 U.S. C. § 284. Also, where it is alleged that the machine was specially made, a state should not benefit from its illegal conduct. If a state has taken property, a right of compensation exists. It would be unfair for the state to unjustly enrich itself and then be immune from repayment. Finally, as the *Parden* Court indicated, the public expects uniform treatment, and one who has obtained a patent has a right to expect that he will be able to fully protect his interests. This Court therefore believes that the IBI is subject to suit in this case and may be held liable for damages.

■ The next issue raised by IBI concerns venue—Plaintiff alleges that venue against IBI properly lies in this district pursuant to 28 U.S.C. § 1400(b). That section provides that venue is proper in the judicial district where the defendant resides or (1) has committed an act of infringement and (2) has a regular place of business. Plaintiff relies on the latter proposition. There is no dispute as to the proper allegation of an act of infringement within the district. The sole question is whether the IBI has a regular place of business in the district. The plaintiff asserts that since the IBI is headquartered in this district in Joliet, has an established location here, and conducts considerable activities here, venue is proper. The IBI responds that as it is performing its governmental functions here, it is not "doing business" and as it is not "doing business," it does not have a regularly established place of business here. The IBI relies upon Isner v. ICC, 90 F.Supp. 361 (E. D.Mich.1950) as support for its view. That case, however, dealt with the definition of "doing business" in 28 U.S.C. § 1391(c). The present case is concerned with the definition of "a regular and established place of business" in 28 U.S.C. § 1400(b). There is no question that if the IBI were a private corporation, this district would be its "regular and established place of business." The question is, can a state agency have a regular and established place of business? The agency must exist somewhere. In *Isner*, the court utilized the residence and principal office of the agency, not the entire government, in determining where the headquarters are located. Further, as § 1400(b) has been interpreted, it is not the type or character of business being conducted, but rather the existence of the business that is crucial. See Shelton v. Schwartz, 131 F.2d 805 (7th Cir. 1942). The Court believes therefore that venue is proper in this district against the IBI.

## II.

■ Ampex also challenges venue in this Court. It, however, relies upon the reverse of IBI's argument. There is no dispute that Ampex does not reside here. Ampex does admit that it has a "regular and established place of business" here for purposes of § 1400(b). Ampex, however, denies that it has committed an act of infringement within the district. It therefore becomes necessary to examine the acts allegedly done by Ampex within the district. Ampex negotiated the contract for the sale of the infringing item in the district and by telephone calls between California and Joliet. The formal contract was executed, however, in Springfield. Ampex spent three weeks installing the unit within the district, including performing some custom modifications. This was a single, large sale. Ampex demonstrated and tested the machine and trained IBI personnel here. Delivery of the machine was made here. Ampex built the machines components in California; however, it was remanufactured here. "Sale" and "use" have broad definitions. "Sale," in this Circuit, does not merely refer to formal execution, but includes delivery, negotiations and other activities. The test is one of "sufficient impairment" of the patentee's rights. See Union Asbestos & Rubber Co. v. Evans Prod. Co., 328 F.2d 949 (7th Cir. 1964). In the instant case, where negotiations,

delivery, reconstruction, training, installation, testing and demonstration relating to a large, expensive, type product all allegedly occurred in this district, venue is proper here. See also Archer Daniels Midland Co. v. Ralston Purina Co., 321 F.Supp. 262 (S.D.Ill.1971).

■ Ampex next requests that this cause be transferred, pursuant to 28 U. S.C. § 1404(a), to the Northern District of California. One requirement, under § 1404(a) before consideration is to be given to convenience is that the district be one in which the action "might have been brought." Since an action could not have been brought originally against the IBI in California, this requirement cannot be met. See Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960); Shutte v. Armco Steel Corp., 431 F.2d 22 (3d Cir. 1972).

■ Finally, Ampex requests that it be severed from IBI, the cause against IBI stayed, and the cause against it transferred. Severance and a transfer of less than all of the case are proper if the defendant as to whom venue is improper is only incidentally and indirectly related to the main subject matter of the suit. Burroughs Corp. v. Newark Electronics Corp., 317 F.Supp. 191 (N.D.Ill.1970). In *Burroughs*, the Court's finding of an incidental relationship was based upon the fact that Raytheon had purchased and resold a small percentage of the total volume of infringing goods. In the instant case, there was one infringing sale and that was to the IBI. It involved over $1,000,000.00. Ampex, however, states that since it has an indemnity agreement with IBI, IBI is only an incidental party. This indemnity agreement, which does not serve as a waiver of sovereign immunity, should not be allowed to control venue, since the plaintiff's right to a proper forum should be pro-

tected. Also, the convenience of the parties does not warrant a transfer. While Ampex asserts that California is more convenient because all of its records and witnesses are located there, it forgets that plaintiff chose this forum, that the machine is located here and was custom-built, and that plaintiff has witnesses for whom this is a more convenient forum. In balancing all of the factors presented, this case should not be transferred.

It is so ordered.

## ON MOTION TO RECONSIDER

This matter comes before the Court on the motion of the defendants, Ampex Corporation and the Illinois Bureau of Investigation (IBI), to have the Court reconsider its decision of January 4, 1974 denying the defendants' motions to dismiss or transfer, or in the alternative, to certify, pursuant to 28 U.S.C. § 1292(b), the question of whether a state agency can be liable for violations of the patent laws.[5] For the reasons set forth below, the motions are denied.

This Court has previously held that state agencies can be held liable for violations of the federal patent laws. The IBI seeks reconsideration based upon the recent Supreme Court decision in Employees v. Missouri Public Health Dept., 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973). In that case the Supreme Court held that sovereign immunity barred a suit brought by state employees under the Fair Labor Standards Act (FLSA). The Supreme Court analyzed its decision in Parden v. Terminal R.R., 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964) and found that *Parden* had not authorized a complete lifting of a state's sovereign immunity merely because of the adoption of the Commerce Clause of the Constitution. This Court has previously determined that *Parden* set forth standards of waiver of a

5. In their motion, the defendants seek reconsideration of this Court's entire decision. However, their brief is directed almost exclusively to the question of the IBI's immunity. The Court believes that its previous

opinion adequately disposed of the various motions. Therefore, this opinion will concern itself with the questions of the IBI immunity and certification.

state's sovereign immunity. It remains this Court's view that the exclusive nature of the grant of a patent and its exclusive control by the federal government requires that a licensee state's immunity be, in effect, waived. Nothing in the *Employees* decision mandates a different result.

The Supreme Court in *Employees* repeatedly emphasized the broad scope of the Commerce Clause and the multivariate contacts it has with state law. 411 U.S. at 285–287, 93 S.Ct. 1614. Patents, both constitutionally and by statute, are exclusively in the federal domain. See U.S.Const., art. 1, § 8; 28 U.S.C. § 1338 (a), 35 U.S.C. § 1 et seq. In *Employees*, the Court's opinion also stressed that private enforcement was not essential to attain the policy objectives of the Fair Labor Standards Act. 411 U.S. at 285–286, 93 S.Ct. 1614. This differs from the patent case, where private enforcement is paramount. There are no other remedies available for patent infringement.

Although the *Employees* Court distinguished *Parden* and to some extent may have clarified its scope, it did not overrule it, nor did it change any of the principles upon which this Court relied in its opinion. Reconsideration is therefore denied.

 The Court does not believe that certification pursuant to 28 U.S.C. § 1292(b) is warranted. Section 1292(b) provides that a district judge who is of the opinion that an order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation" may so indicate and certify the question. In the instant case, even assuming the first two requirements are met, the Court does not believe that an immediate appeal will materially advance the litigation.

Even if the IBI were to be dismissed, Ampex would remain a defendant.

In its original opinion, the Court ruled that it would not order a transfer pursuant to 28 U.S.C. § 1404(a). Thus, one defendant would still remain before the Court and the litigation would not be terminated. See Speir v. Robert C. Herd Co., 189 F.Supp. 436, 439 (D.Md. 1960). Furthermore, Ampex has agreed to indemnify the IBI, thus lessening the state's concern if a money judgment should be awarded. The judicial system frowns upon piecemeal appeals because they are costly in time and money, and can constitute waste except in unusual circumstances. See Baltimore Contractors v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955). The right of IBI to maintain its claim will be preserved. As the Court believes that its decision is well grounded and that an immediate appeal would serve no useful purpose, the motions to reconsider and for certification are denied.

It is so ordered.