DUAL MANUFACTURING AND ENGI-
NEERING, INC. and the Berkline Cor-
poration, Plaintiffs-Appellants,

v.

BURRIS INDUSTRIES, INC.,
Defendant-Appellee.

No. 75–1727.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1976.

Decided March 23, 1976.

Max R. Kraus, David D. Kaufman, Chicago, Ill., Kenwood Ross, Springfield, Mass., for plaintiffs-appellants.

John D. Poffenberger, William G. Konold, Cincinnati, Ohio, Kenneth C. Miller, Chicago, Ill., for defendant-appellee.

Before SWYGERT, SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

The sole issue in this appeal is whether the alleged infringer has committed acts of infringement within, and has a regular and established place of business within, the Northern District of Illinois to satisfy the patent infringement venue statute, 28 U.S.C. § 1400(b).

The plaintiffs, Dual Manufacturing and Engineering, Inc. and the Berkline Corporation, brought this action for patent infringement against the defendant, Burris Industries, Inc., a manufacturer of furniture, including a sliding reclining chair.

The subject of the patent is a complete reclining chair having a number of elements arranged so that the chair may be positioned close to a wall but may be operated by an occupant from the upright sitting position to the reclining position without striking the wall. Berkline manufactures the complete patented chair under an exclusive license and Dual manufactures certain hardware for the chair, and is the owner by assignment of the patent.

Upon Burris' motion, the district court dismissed the action for improper venue.

To determine whether venue is or is not proper, it is necessary to consider the facts relating to venue in detail.

## I

For from 10 to 15 years, Burris has continuously maintained a showroom in Chicago, Illinois, previously in the American Furniture Mart, and for the past two years in the Merchandise Mart (9, 10, 56).[1] The present showroom occupies 3200 square feet (6–7), where at least six models of Burris' sliding reclining chairs are on continuous display for sales purposes (15–16, 37), among various furniture room groupings (7). The showroom is open five days a week (7) for the demonstration of Burris' products (50) and to solicit sales of those products (22–23).

Burris enters into the leasing arrangements for the showroom and presently is committed to a three-year lease which it has signed (9, 11). Burris pays the rent directly to the lessor (Young affidavit at 2). Burris also pays for the telephone and electricity (3, 11), for telephone directory listings (47), for cooperative advertising when used (55) and for the cost of local service men who satisfy customer complaints (52–54).

All of the furniture samples and merchandise in the showroom are the property

---

1. Numerical references are to pages in the deposition of Carl O'Koon, the Burris sales representative (5) who operates the Burris showroom (6).

of Burris (23–24), as well as a desk, filing cabinets and other office equipment located in the showroom (24). At least for the years 1965 through 1973, Burris has paid a personal property tax to the Treasurer of Cook County, the amount paid being as high as $634.04 in 1971 (Rec. doc. no. 45).

On the window of the showroom appear the names of Burris and Domani, a division of Burris, and the registered logo or logo-type of Burris (6, 12–13). Burris' name is listed in the directory in the building lobby (6, 12) and in the Merchandise Mart's published buyers' guide (49). The names of Burris and Domani appear in both the Chicago alphabetical and classified telephone directories, indicating the telephone number located at the showroom (11, 44–47, dep. exs. 9, 10). The showroom telephone is answered "Burris-Domani" (60). Burris' promotional literature and business cards are available at the showroom and are distributed to customers (22, dep. exs. 1, 4, 5).

Burris Industries, Inc. is qualified to do business in Illinois as a foreign corporation (56–57, dep. exs. 12, 13, 14, 15).

The showroom is operated by Carl O'Koon (6), a sales representative for Burris (5), who represents Burris to the exclusion of all other companies (35, 50). O'Koon ordinarily appears at the showroom only on Fridays (5, 8, 22), but a full-time receptionist is at the showroom during all business hours (7) and either O'Koon or the receptionist is available to solicit business and write up orders (22–23). O'Koon, and presumably the receptionist also, demonstrate the sliding reclining chairs (22–23, 50).

During the semiannual furniture shows held in Chicago, several sales representatives of Burris from around the country, as well as one or more Burris executives from the home office, appear at the showroom for six-day periods, to hold sales meetings and to take orders for Burris products (36–42). O'Koon testified on deposition that "that's the purpose of the showroom"—"the purpose that people come at the show time to see the merchandise and place their orders. . . ." (37).

Most of the Burris customers come in during the twice-a-year shows, known as "market time" but during the course of the year "there will be people in and out during the week" (8–9). As O'Koon travels about his territory, he says to people, "the showroom is open, why don't you go in and take a look" (35). Interior decorators also visit the showroom throughout the year to make purchases of Burris' products (22) and some customers mail orders to the showroom (42).

In addition to soliciting business, taking orders (22–23) and demonstrating chairs at the showroom (50), O'Koon uses the showroom as a part-time office on behalf of Burris, in that he checks telephone messages sent in during his absence (8), processes mailed orders (42), telephones customers to make appointments to see them outside the showroom (34) and keeps records of orders filled by the receptionist (31–35). Customer complaints and repair requests are also received at the showroom, which O'Koon refers to local service men whose charges are paid directly by Burris (52–54).

Neither O'Koon nor the receptionist is paid a salary by Burris (7, 43, Young affidavit at 2). The receptionist works on a straight commission, which is paid to her by O'Koon (7, 34). O'Koon is the Burris sales representative for the northern half of Illinois and the Calumet region of Indiana, selling the complete Burris line (6) and receiving a commission from Burris on each sale made in his territory (8). In addition to spending one day a week in the showroom, he travels throughout his territory soliciting business and taking orders (5) by means of a large Burris book which contains photographs of the products in the Burris line (13–16). O'Koon has two business cards, one each for Burris and Domani, which list his home address and telephone, and also list as his business address and business telephone the address and telephone of the Burris showroom (dep. exs. 4, 5).

All Burris orders are transmitted to the home office of Burris in Lincolnton, North Carolina, for approval. O'Koon has no au-

thority to accept any order for goods or to make any sale, but only to forward to Burris the orders which he has solicited which orders do not bind Burris until they are accepted. After approving an order, Burris ships the furniture ordered directly to the customer. Bills for all goods shipped are forwarded directly to the customer and remittances in payment thereof, are made directly to Southeastern Financial Corporation in Charlotte, North Carolina, as factor for Burris. None of the furniture ordered is handled by O'Koon and he makes no collections for the furniture shipped (Young affidavit at 2).

Burris maintains no bank accounts in Chicago (Young affidavit at 2). Except for the rent, telephone, electricity, telephone listings, cooperative advertising and service costs, which are paid by Burris, O'Koon pays his own expenses, which he described as stamps, envelopes, gasoline and everything else (52). However, Burris does furnish him with printed Burris and Domani order forms (dep. exs. 2, 3), a printed sales brochure (dep. ex. 1) and Burris imprinted memo pads (dep. ex. 6). O'Koon owns "not a thing" in the showroom, "not one nickel" (24).

## II

Venue in patent infringement suits is governed solely and exclusively by 28 U.S.C. § 1400(b),[2] except where the allegedly infringing defendant is an alien, in which case, 28 U.S.C. § 1391(d), which provides that an alien may be sued in any district, governs. *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972). 28 U.S.C. § 1400(b) provides:

> Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

The defendant here, Burris Industries, Inc., is a North Carolina Corporation with its principal place of business in Lincolnton, North Carolina (Young affidavit at 1). In the case of a corporation not subject to 28 U.S.C. § 1391(c), it is a "resident" of only the state of its incorporation. *Shaw v. Quincy Mining Co.,* 145 U.S. 444, 12 S.Ct. 935, 36 L.Ed. 768 (1892); *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 226, 77 S.Ct. 787, 790, 1 L.Ed.2d 786, 789 (1957). Therefore, Burris "resides" only in North Carolina.[3] The test for venue in the Northern District of Illinois must rest on whether Burris has committed acts of infringement *and* has a regular and established place of business within the district.

The district court dismissed the action on the basis that Burris' activities in the district were insufficient to constitute a regular and established place of business in the district. Having so determined, the court found no need to decide whether Burris committed acts of infringement in the district.

We are required to exercise great care in discriminating between the facts in this case and those in precedential cases because the patent infringement venue requirements are "specific and unambiguous" not "to be given a 'liberal' construction." *Schnell v. Peter Eckrich & Sons, Inc.,* 365

---

2. *Stonite Products Co. v. Melvin Lloyd Co.,* 315 U.S. 561, 62 S.Ct. 780, 86 L.Ed. 1026 (1942) (infringement venue not supplemented by what is now 28 U.S.C. § 1392(a), a general venue statute providing that a transitory civil action against multiple defendants residing in different districts in the same state may be brought in any such district); *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) (infringement venue not supplemented by 28 U.S.C. § 1391(c), a general corporation venue statute, which provides that a corporation may be sued in any district in which it is incorporated or licensed to do business or is doing business). See also, *Schnell v. Peter Eckrich & Sons,* 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961) (reaffirming *Stonite* and *Fourco*).

3. It does not suffice under 28 U.S.C. § 1400(b) that Burris is licensed to do business in Illinois as a foreign corporation or that it may be "doing business" in the Northern District of Illinois. *Knapp-Monarch Co. v. Casco Products Corp.,* 342 F.2d 622, 624–625 (7th Cir. 1965).

U.S. 260, 264, 81 S.Ct. 557, 561, 5 L.Ed.2d 546, 550 (1961); see also, *Mid-Continent Metal Products Co. v. Maxon Premix Burner Co.,* 367 F.2d 818, 820 (7th Cir. 1966).

### A

First we deal with the patent infringement venue requirement of a "regular and established place of business."

In *W. S. Tyler Co. v. Ludlow-Saylor Wire Co.,* 236 U.S. 723, 725, 35 S.Ct. 458, 459, 59 L.Ed. 808, 809 (1915), the alleged infringing defendant employed an "Eastern Representative"

> . . . paying him a small salary, commission on sales and traveling expenses. During this period he was also employed by another corporation which rented a room in . . . New York city, and there he maintained headquarters as representative of both concerns—the rent and stenographer's wages being apportioned between them according to agreement. His duty to [the defendant] was "to solicit orders [and] forward them when received to the home office for execution."

In a short memorandum opinion, the Supreme Court held that these facts were insufficient to show that the defendant had a regular and established place of business in New York City.

This court found that an alleged infringer did have a regular and established place of business where the facts were summarized by the district court as follows (*Shelton v. Schwartz,* 43 F.Supp. 328, 329 (N.D.Ill. 1942)):

> . . . Carl Zeiss, Inc., is a corporation organized under the laws of the state of New York, with its principal place of business in the city of New York; that for the past 15 years, it has maintained an office in Chicago, used by two salaried employees of the company to solicit orders for the company's products from residents of the district; that the name of the corporation appears in the Chicago telephone directories, on the index of tenants of the building in which it maintains an office and on the door of its office; that the present lease for the office calls for the payment of rent by the company for "an office for said company's business"; that in the office, in which the company's two employees have desks, are show cases in which are displayed sample products of the company, and there are also kept in the office and distributed therefrom folders and circulars describing the products of the company; that samples of its products for use by its employees in soliciting orders are carried in the Chicago office; that the employees in the Chicago office have no authority to accept or fill orders for the company's products, but they have authority only to solicit such orders and to forward them, when obtained, to the office of the company in New York for acceptance and filing, or rejection; and that, when orders received from the Chicago office are accepted, the goods are shipped directly from the New York office to the purchaser in Chicago.

Our court concluded in *Shelton v. Schwartz,* 131 F.2d 805 (7th Cir. 1942), that these facts constituted a regular and established place of business,[4] distinguishing *Tyler Co.* by noting that there "the place of business was a room rented by another corporation and the agent was employed by said 'other corporation' which rented the room." 131 F.2d at 809.

In more recent years, this court has had several opportunities to develop its interpretation of a regular and established place of business. In the following four cases, we held that the facts did *not* indicate the

---

4. In *Shelton* we concluded:

Applying the foregoing, it is apparent that the defendant had a "regular and established place of business" in Chicago. An office was by it maintained there. Defendant paid the rent therefor. Its name was placed in the telephone directory. Its name appeared upon the door of its office. For years, through this office, it maintained salesmen and representatives, who solicited orders and carried on a continuous, substantial business in "soliciting orders."

131 F.2d at 808.

necessary place of business within the district.

In *Knapp-Monarch Co. v. Casco Products Corp.,* 342 F.2d 622 (7th Cir.), *cert. denied,* 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73 (1965), the defendant utilized the services of a manufacturer's representative whose company had its office in the Merchandise Mart in Chicago. It paid its own rent and other expenses and was not reimbursed therefor by the defendant. The representative was compensated by a commission on sales, which it solicited and sent to defendant for approval, but it never demonstrated defendant's products. The defendant rented space semiannually at the national furniture shows in Chicago. This Court held that the defendant's participation in the furniture shows "constituted a temporary presence in Chicago" and that the representative's office was not defendant's regular and established place of business "when we are mindful that Casco [defendant] paid none of Langenfeld's [representative] expenses, had no employees in the latter's office, and exercised no control over its operation." 342 F.2d at 625.

In *Knapp-Monarch Co. v. Dominion Electric Corp.,* 365 F.2d 175 (7th Cir. 1966), the defendant also utilized the services of a manufacturer's representative with an office in the Merchandise Mart in Chicago. The representative acted on behalf of several other manufacturers as well as defendant, who did participate in the semiannual furniture shows. We concluded that the defendant had no regular and established place of business in the district on the authority of *Casco.*

In *University of Illinois Foundation v. Channel Master Corp.,* 382 F.2d 514 (7th Cir. 1967), the defendant had a single employee who resided in the district and ran the defendant's business in the district from the bedroom of his home. This court held that "we cannot by any stretch of the imagination characterize [the employee's] family bedroom or even his entire home as 'a regular and established place of business.' " *Id.* at 516.

Finally, in *Grantham v. Challenge-Cook Bros., Inc.,* 420 F.2d 1182 (7th Cir. 1969), this court held that the presence of a non-exclusive distributor of the defendant's products within the district was not sufficient to subject the defendant to suit in the district. Judge Hastings examined prior Seventh Circuit cases and said at 1184–1185: [5]

> In these cases we found venue improper in the subject district even though defendant's activities in the district included one or more of the following: maintaining an exclusive distributorship; establishing and maintaining some control over a chain of exclusive, independent distributors; maintaining an independent business man as a sales representative on a commission basis; periodic visits by high-ranking executives to large customers to discuss sales; maintaining authorized warranty service, including repair and replacement of defective products; occasional rental of business space; and maintaining telephone or other listings.

The facts relevant to venue in the present case are very close to the facts in *Shelton.* The only substantial differences are that there two salaried employees solicited orders, whereas here two representatives, compensated by commission do so; and there the defendant maintained in the district an office with show cases displaying defendant's products, whereas here the defendant maintains a showroom with a desk and filing cabinets for office use. This case is distinguished from *Tyler Co.* by the fact that there the defendant shared both the room and the representative with another company. This case is distinguished from *Casco, Dominion Electric, Channel Master*

---

5. Judge Hastings distinguished *Shelton v. Schwartz,* 131 F.2d 805 (7th Cir. 1942) as follows:

> In *Shelton,* the defendant had rented an office in the district for 15 years which it staffed with two salaried employees. Other factors were present to contribute to the picture of a well-established place of business in the district.
> 420 F.2d at 1185.

and *Challenge-Cook,* in that none of those cases did the defendant lease and pay rent for its own exclusive, permanent office or showroom.

Burris seeks to distinguish this case from *Shelton* by emphasizing that it has no salaried employees in the Northern District of Illinois. The plaintiffs answer that at least under Illinois tort law "the right of control, not the fact of control, . . . is the principal factor in distinguishing a servant from [an independent] contractor." *Gunterberg v. B & M Transportation Co., Inc.,* 27 Ill.App.3d 732, 738, 327 N.E.2d 528, 533 (1975). We adopted a similar test in *Knapp-Monarch Co. v. Casco Products Corp.,* 342 F.2d 622, 625 (7th Cir., 1965) when we indicated that defendant would have a regular and established place of business if it exercised control over the operation of a permanent office.

A regular and established place of business has often been found where the defendant has paid the rent for a permanent office or showroom not shared with other sellers of merchandise. *Latini v. R. M. Dubin Corp.,* 90 F.Supp. 212 (N.D.Ill.1950); *Stiegele v. Jacques Kreisler Mfg. Corp.,* 213 F.Supp. 494 (S.D.N.Y.1962); *Watsco, Inc. v. Henry Valve Co.,* 232 F.Supp. 38 (S.D.N.Y. 1964). In *Latini,* the operator of the office was not a salaried employee but was compensated solely by commissions on sales, 90 F.Supp. at 213.

In the present case, the showroom-office (in the Merchandise Mart and earlier in the Furniture Mart) has been leased by Burris for from 10 to 15 years. In *Shelton,* the office had been maintained for 15 years, 43 F.Supp. at 329; in *Stiegele,* for 20 years, 213 F.Supp. at 495. These were obviously all permanent rather than temporary arrangements.

Inasmuch as Burris negotiated and signed the lease, paid the rent directly, paid for telephone and electricity, paid for telephone listings, paid for cooperative advertising, paid for service expenses, owned all of the products, office equipment and other personal property in a relatively large (3200 square feet) showroom-office, Burris had the clear right to exercise control over those premises. O'Koon spent his time exclusively in the service of Burris. Under these circumstances, it is immaterial whether he was a salaried employee or a commissioned sales representative. If Burris terminated his representation, he was as completely discharged as a salaried employee would be. His economic fate rested with Burris. The right to termination gave Burris the right to control O'Koon as well as to control the Burris premises in Chicago.

We conclude that Burris has a regular and established place of business in the Northern District of Illinois.

## B

■ Inasmuch as we differ with the district court on the question of place of business, we must consider the additional venue requirement of commission of acts of infringement within the district.

Whoever, without authority, makes, uses or sells any patented invention within a district infringes the patent in that district. 35 U.S.C. § 271(a). In the cryptic memorandum opinion in *W. S. Tyler Co. v. Ludlow-Saylor Wire Co.,* 236 U.S. 723, 725, 35 S.Ct. 458, 459, 59 L.Ed. 808, 809 (1915), the Supreme Court said:

> The circumstances attending only one sale appear in the record, and this was negotiated by the purchaser in order that it might afford the basis for a suit. [The representative] received and forwarded, and his principal accepted, the order for goods which were thereafter manufactured and shipped by express to the purchaser in New York City. This sale was consummated at St. Louis and did not constitute an infringement of appellant's patent within the district where suit was brought [the Southern District of New York].

*Tyler Co.* has been construed as holding that solicitation within a district of a sale approved outside the district does not in itself satisfy the patent infringement venue statute. *Minnesota Mining & Mfg. Co. v. International Plastic Corp.,* 159 F.2d 554,

560 (7th Cir. 1947); *Knapp-Monarch Co. v. Casco Products Corp.,* 342 F.2d 622, 626 (7th Cir. 1965).

In *Union Asbestos & Rubber Co. v. Evans Product Co.,* 328 F.2d 949, 952 (7th Cir. 1964), Judge Kiley speaking for this court said:

> We hold that the two demonstrations of the accused device, added to the systematic and continuous solicitation of orders within the district, constitute, for venue purposes, a sufficient degree of selling to amount to "infringing sales."

We have adhered to *Union Asbestos* in subsequent cases. In *Mid-Continent Metal Products Co. v. Maxon Premix Burner Co.,* 367 F.2d 818, 819–20 (7th Cir. 1966), *Union Asbestos* was cited but venue was found not to exist where the defendant *"has never displayed or demonstrated the accused burners in the district,"* (emphasis in *Mid-Continent* opinion. In *T. P. Laboratories, Inc. v. Ormco Corp.,* 389 F.2d 622, 623, 628 (7th Cir. 1968), *Union Asbestos* was cited but venue was not established where:

> No samples of the accused pin were ever kept in the Chicago office . . . nor have sales solicitation, physical demonstration or discussion of the accused pins occurred in the Northern District of Illinois.

Here, there were a "systematic and continuous solicitation of orders," a large showroom of furniture, including sliding reclining chairs, and demonstrations of the accused product, all within the Northern District of Illinois. Upon the authority of *Union Asbestos,* we hold that Burris committed acts of infringement in the Northern District of Illinois.

Burris has contended that O'Koon's deposition indicates that the accused chair was not on display until after the complaint was filed in this case. O'Koon's deposition, when read in its entirety, clearly shows that O'Koon did not remember when the Chicago showroom began to display the accused chairs. On the other hand, the affidavit of plaintiffs' attorney states that the accused chairs were on display for sale at the Chicago showroom prior to the filing of the complaint. If this was not the fact, or was contested, it would have been simple for Burris to file a counter-affidavit so stating.

We reverse the judgment of dismissal and remand for further proceedings.