**DIGITAL EQUIPMENT CORPORATION**

v.

**ELECTRONIC MEMORIES &
MAGNETICS CORP.**

Civ. A. No. 77–1580–F.

United States District Court,
D. Massachusetts.

June 12, 1978.

George A. Herbster, Martin J. O'Donnell, Cesari & McKenna, Robert A. Cesari, Boston, Mass., for plaintiff.

Arthur Freilich, Linderberg, Freilich, Wasserman, Rosen & Fernandez, Los Angeles, Cal., Cornelius J. Moynihan, Jr., Peabody, Brown, Rowley & Storey, Boston, Mass., Travis Gordon White, Paul M. Janicke, Arnold, White & Durkee, Houston, Tex., for defendant.

## MEMORANDUM

FREEDMAN, District Judge.

This is a patent and trademark infringement action focusing on four data processing system patents allegedly held by plaintiff Digital Equipment Corporation ("DEC") and infringed by defendant Electronic Memories & Magnetics Corporation ("EMM"). The matter is before the Court on EMM's motion to dismiss for improper venue or in the alternative to transfer the case to the Central District of California.[1]

### I

DEC is a Massachusetts corporation with its principal place of business in Maynard, Massachusetts. EMM is a Delaware corporation with its principal place of business in Los Angeles, California. EMM's main products are computer memory devices. DEC manufactures electronic digital computers.

The patents involved in this action are: United States Letters Patent No. 3,614,740 (the " '740" patent); No. 3,710,324 (the " '324" patent); No. 3,614,741 (the " '741" patent); and No. 3,815,099 (the " '099" patent). DEC manufactures and sells data processing systems incorporating these patents under the trademark "PDP–11."[2] Subsequent to the filing of this action, EMM entered into a license agreement with DEC with respect to the '099 patent and has admitted, for purposes of this motion, that venue is proper as to that patent.

EMM offers only two products in the data processing system category. One is the "SECS–11" system mentioned in the complaint (see n. 2, *supra*). The SECS–11 is offered in two versions, the SECS–11 cardset and the SECS–11/I fully packaged minicomputer. Both products are marketed as capable of emulating the corresponding PDP–11 systems. The other EMM data processing system is the Model 800 which is not involved in this litigation.

EMM organizes its business into several divisions along product lines. The allegedly infringing SECS–11 systems are manufactured and marketed by EMM's Severe Environment Products Division which is headquartered in Chatsworth, California. The employees at EMM's Massachusetts facilities are not under the supervision or control of the Severe Environment Products Division and have no responsibilities in connection with the SECS–11 systems.

EMM has sold and delivered only one SECS–11 system. The sale was F.O.B. Chatsworth, California. The purchaser was Simmonds Precision Equipment, Inc. of

1. The motion was heard by the Court on March 27, 1978. The following documents are before the Court at this time: the complaint, the motion and memorandum in support thereof, DEC's memorandum in opposition to the motion, EMM's reply memorandum, affidavits of Richard P. Shively and Trude C. Taylor, affidavit of Richard A. Fredrickson with exhibits, and deposition of Elton L. Kavanaugh with exhibits.

2. As noted, this action includes a claim for trademark infringement. The trademark claim is based upon EMM's marketing of data processing systems under the designations "SECS–11" and "SECS–11/I," (collectively, the "SECS–11 System"). The SECS–11 System is advertised by EMM as an emulator of the PDP–11 system. Since the filing of this action, however, EMM has agreed not to use the designations "SECS–11" or "SECS–11/I" and has changed the designation of those devices to "SECS–2" and "SECS–3," respectively.

Vermont. The negotiations leading to the sale to Simmonds Precision Equipment, Inc. were held partly in Vermont and partly in California. None of the negotiations took place in Massachusetts. No order relating to the SECS–11 system has been received by EMM from any customer in Massachusetts.

Elton Kavanaugh is EMM's sales manager for the Severe Environment Products Division for the eastern region which consists of the area east of the Mississippi except for Minnesota and Iowa. Through Kavanaugh, who is based in New Jersey, EMM has had contact with customers in Massachusetts relating to the SECS–11 system. These contacts have been through the mailing of literature and through actual meetings at customer locations. No such meetings have taken place without Mr. Kavanaugh's presence.

Mr. Kavanaugh sometimes uses EMM's Massachusetts offices for writing or making phone calls. He does not, however, leave literature relating to the SECS–11 at these offices. Only a small percentage of Mr. Kavanaugh's responsibilities are devoted to marketing and sales efforts relating to the SECS–11.

A number of potential customer companies in Massachusetts were contacted personally by Mr. Kavanaugh regarding the SECS–11 system.[3] While meetings with individuals at these companies were not limited to discussion of the SECS–11, Mr. Kavanaugh did on these occasions inform the customer that the product was available and in some cases discussed the product further and distributed brochures. The SECS–11 system has never been brought into Massachusetts, or stored, displayed or demonstrated here.

Kavanaugh generally does not demonstrate products to potential customers. Sales of products like the SECS–11 are primarily to original equipment manufacturers who are sophisticated in their knowledge of data processing systems. Often, customers base their initial decision to purchase on information in the product descriptions provided to them in brochures. The information provided in the brochures describing the SECS–11 system coupled with publicly available knowledge about the PDP–11 provides a customer with information equivalent to that provided to customers who have elected to purchase the PDP–11 without a demonstration. Kavanaugh has the authority to commit EMM to sales.

## II

Venue of patent infringement actions, except those brought against an alien,[4] is governed exclusively by 28 U.S.C. § 1400(b) ("Section 1400(b)").[5] Section 1400(b) provides a plaintiff with two choices of forum. He may sue in the district where the defendant is incorporated or where the defendant has both a regular and established place of business and has committed acts of infringement.[6] It is undisputed that EMM

---

3. Many of these potential customers expressed concern over the possibility of lawsuits by DEC such as the one at bar.

4. The Supreme Court has unanimously held that the alien venue statute, 28 U.S.C. § 1391(d), and not the patent venue statute, 28 U.S.C. § 1400(b), governs the venue of a patent infringement action brought against an alien. *Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 92 S.Ct. 1936, 32 L.Ed.2d 428 (1972).

5. The exclusivity of Section 1400(b) is well established. *See, e. g., Schnell v. Peter Eckrich & Sons,* 365 U.S. 260, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961); *Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957); *Stonite Products Co. v. Melvin Lloyd Co.,* 315 U.S. 561, 62 S.Ct. 780, 86

L.Ed. 1026 (1942); *Dual Manufacturing and Engineering, Inc. v. Burris Industries, Inc.,* 531 F.2d 1382 (7th Cir. 1976); *Stanley Works v. Globemaster, Inc.,* 400 F.Supp. 1325 (D.Mass. 1975).

6. Section 1400(b) provides:

(b) any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

A corporation resides only in the district of its incorporation for purposes of Section 1400(b). *Fourco Glass Co. v. Transmirra Products Corp., supra.*

is incorporated in Delaware and that EMM has regular and established places of business in Massachusetts.[7] Venue in this district is proper, therefore, only if EMM has committed acts of infringement here.

DEC argues that EMM's business presence in Massachusetts coupled with the "continuous and systematic solicitation" of sales here is sufficient to establish acts of infringement with regard to the '740, '324 and '741 patents which the SECS–11 system allegedly infringes. Alternatively, DEC contends that venue as to those patents is established by EMM's admission of venue as to the '099 patent because of their technological similarities and interrelationships.

■ An act of infringement occurs when an unauthorized party makes, uses or sells a patented invention or induces another to do so. 35 U.S.C. § 271 ("Section 271").[8] EMM has not, within the meaning of Section 271 made, used or sold the allegedly infringing SECS–11 system in Massachusetts nor induced another to do so here.

■ The SECS–11 system was designed and is manufactured in California. Moreover, it appears that no SECS–11 system has ever been physically present in Massachusetts. EMM has therefore committed no infringing manufacture or use of the accused device in this district.

■ Any contention that EMM has actively induced an infringement here can likewise be readily rejected. Active inducement means to cause or aid another to infringe a patent.[9] *E. g., Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1142

(7th Cir. 1975). There must be a direct infringement for one to be liable as an active inducer. *E. g., Deepsouth Packing Co., Inc. v. Laitram Corp.,* 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273, *reh. denied,* 409 U.S. 902, 93 S.Ct. 94, 34 L.Ed.2d 165 (1972). Since no one has made, used, or sold[10] the accused SECS–11 in Massachusetts, EMM cannot be said to have contributed to, or induced an infringement.

EMM's "sales" activities are the focus of DEC's contention that venue is proper in this district. The early view that venue would lie only in a district where a completed transaction had taken place, *W. S. Tyler Co. v. Ludlow-Saylor Wire Co.,* 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915) (dictum), has given way to a requirement that significant marketing activities leading to its consummation were conducted by the defendant there. *E. g., Union Asbestos & Rubber Co. v. Evans Products Co.,* 328 F.2d 949 (7th Cir. 1964); *Stanley Works v. Globemaster, Inc.,* 400 F.Supp. 1325 (D.Mass. 1975). *But see Self v. Fisher Controls Company, Inc.,* 566 F.2d 62 (9th Cir. 1977).

■ DEC maintains that EMM's "continuous and systematic solicitation" of sales in Massachusetts is sufficient to support venue here. Even assuming DEC's characterization of EMM's activities here as "continuous and systematic solicitation" to be accurate, I cannot agree that venue properly lies in this district. No case has been brought to this Court's attention in which solicitation alone was held on the facts to be sufficient to support venue. In fact, findings of prop-

---

7. It makes no difference that the Massachusetts offices are not under the supervision or control of EMM's Severe Environment Products Division, which manufactures and markets the allegedly infringing product. *Gaddis v. Calgon Corporation,* 449 F.2d 1318 (5th Cir. 1971).

8. Section 271 provides, in pertinent part:
   (a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefore, infringes the patent.
   (b) Whoever actively induces infringement of a patent shall be liable as an infringer.

9. The active inducement provision of 35 U.S.C. § 271(b) and the provisions of 35 U.S.C. § 271(c) codified the earlier case law of "contributory infringement." *See Aro Manufacturing Co., Inc. v. Convertible Top Replacement Co., Inc.,* 365 U.S. 336 at 347 n. 1 and n. 2, 81 S.Ct. 599, 5 L.Ed.2d 592 (1961) (Black, J., concurring).

10. DEC's contention that EMM has, for venue purposes engaged in sufficient sales activity in Massachusetts, even if accurate, would not make EMM an active inducer since one cannot logically be the inducer of his own infringement.

er venue are generally premised, at a minimum, upon a showing of an eventual sale, demonstrations or the physical presence of the accused device in the district. *E. g., Dual Manufacturing and Engineering, Inc. v. Burris Industries, Inc.,* 531 F.2d 1382 (7th Cir. 1976); *Union Asbestos & Rubber Company v. Evans Products Company, supra; American Can Co. v. Crown Cork & Seal Co., Inc.,* 433 F.Supp. 333 (E.D.Wis.1977); *Briggs v. Gould-National Batteries, Inc.,* 272 F.Supp. 186 (N.D.Ill.1967); *Stiegele v. Jacques Kreisler Manufacturing Corporation,* 213 F.Supp. 494 (S.D.N.Y.1962). I join those courts who have stated that solicitation alone is insufficient. *E. g., Mid-Continent Metal Products Co. v. Maxon Premix Burner Company,* 367 F.2d 818 (7th Cir. 1966); *Air Factors, Inc. v. Edward Filkins, Inc.,* 368 F.Supp. 542 (E.D.Wis.1973).

■ On this precedent, I find that EMM's activities in this district do not amount to the acts of infringement required by Section 1400(b). The accused SECS–11 has never been demonstrated or even physically present in Massachusetts. No sale of the SECS–11 has arisen from EMM's activities here. I cannot accept DEC's argument that distribution of technical brochures describing the SECS–11 is the equivalent of demonstrating the product because of the common customer practice of basing a decision to purchase a data processing system on the written description alone.[11] *T. P. Laboratories, Inc. v. Ormco Corporation,* 389 F.2d 622 (7th Cir. 1968). Nor do I find any merit in the suggestion that the mere fact that Kavanaugh had the authority to commit EMM to sales is, in the absence of such a completed sale, enough to support venue in this district. *But see Air Factors, Inc. v. Tempmaster Corporation,* 363 F.Supp. 93 (E.D.Wis.1973); *Air Factors, Inc. v. Edward Filkins, Inc., supra.*

■ DEC's final argument in support of its contention that venue is proper in this district is that EMM's admission of venue as to the '099 patent also establishes venue

11. To agree with DEC would be to ignore the Supreme Court's admonition that Section 1400(b) is to be strictly construed. *See Schnell*

as to the '740, '741 and '340 patents. DEC argues that because of the interrelationships between the patents and their technological similarities, the establishment of venue as to one should serve to establish venue as to the others. I cannot agree.

■ While a plaintiff need not establish proper venue as to each claim within an individual patent, *e. g., General Foods Corporation v. Carnation Company,* 411 F.2d 528 (7th Cir.), *cert. denied,* 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (1969), he must establish proper venue as to each patent allegedly infringed. *E. g., Kalvar Corporation v. Memorex Corporation,* 386 F.Supp. 273 (E.D.La.1974). The rationale behind this requirement becomes apparent when one considers the difficulties potentially involved in determining whether, in a given instance, two patents are sufficiently interrelated or share a sufficiently similar technology so as to bind them together for venue purposes. "The selection of venue should be a simple, almost mechanical, process unhampered by complex requirements." 1 J. Moore, *Federal Practice* ¶ 0.140[1.–1] at 1308. *See Schnell v. Peter Eckrich & Sons,* 365 U.S. 260 at 264, 81 S.Ct. 557, 5 L.Ed.2d 546 (1961) (the requirement of venue is a specific and unambiguous one which should not be liberally construed).

For the foregoing reasons, I find that venue does not properly lie in this district as to the '740, '741 and '340 patents. It is therefore necessary to consider whether this action should be transferred pursuant to 28 U.S.C. § 1406(a) ("Section 1406(a)") or dismissed.

### III

Section 1406(a) provides:

(a) The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

*v. Peter Eckrich & Sons, supra,* 365 U.S. at 264, 81 S.Ct. 557.

Having found venue in this district to be improper, the Court must determine whether the interest of justice favor transfer of this action over dismissal and whether the case could have initially been brought in the Central District of California, the suggested transferee district.

The matter of choosing between transfer and dismissal lies within the discretion of the district court. 1 J. Moore, *Federal Practice* ¶ 0.146[5] at 1664. In this case, the Court finds that transfer of the action is in the interest of justice. DEC is not a "nondiligent plaintiff" who knowingly filed this case in the wrong district. *Cf., Mulcahy v. Guertler,* 416 F.Supp. 1083 (D.Mass.1976) ("plaintiff . . . either knew or should have known . . . that service of process could not be effected over the defendant in this district"). DEC's arguments that venue is proper in Massachusetts, while not prevailing, were not frivolous. The defendant EMM is located in the Central District of California, and although DEC will be required to travel there to prosecute this action, many witnesses relating to the design and manufacture of the accused SECS–11 system may be found in California.[12] It seems preferable that causes of action be decided on their merits rather than on procedural technicalities, and while DEC could, if the action is dismissed here, recommence the action elsewhere, there seems little point in requiring the parties and another court to retrace the steps already taken in this action. Furthermore, EMM itself has suggested the transfer.[13]

EMM has regular and established places of business in the Central District of California and the accused SECS–11 system was designed and is manufactured there. This action could therefore have been brought there.

The Court will therefore order that DEC's claims under the '740, '741 and '324 patents be transferred to the Central District of California.

12. I note that the only other district in which venue appears to lie is the District of Delaware where EMM is incorporated.

13. DEC's objections to the transfer were based solely on its contention that venue is proper in Massachusetts.