**A.P.T., INC., a California corporation, d/b/a Calvert Environmental, Plaintiff,**

v.

**QUAD ENVIRONMENTAL TECHNOLOGIES CORP., INC., a Delaware corporation, Defendant.**

**No. 88 C 6000.**

United States District Court, N.D. Illinois, E.D.

Oct. 27, 1988.

---

William F. Woods, San Diego, Cal., John L. Alex, Charles C. Valauskas, Lockwood, Alex, Fitzgibbon & Cummings, Chicago, Ill., for plaintiff.

Gomer W. Walters, Chicago, Ill., Neil A. Smith, Virginia S. Medlen, Limbach, Limbach & Sutton, San Francisco, Cal., Alan E.J. Branigan, George C. Kurtossy, Griffin, Branigan & Butler, Arlington, Va., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Defendant Quad Environmental Technologies Corporation ("Quad") holds rights to a patented process for removing odors from unsaturated gas streams (U.S. Patent No. 4,238,461) used primarily in wastewater treatment facilities. Plaintiff A.P.T., Inc., doing business as Calvert Environmental ("Calvert"), sells wastewater treatment products to municipalities in direct competition with Quad. On May 17, 1988, Quad filed a patent infringement action in

the United States District Court in the Northern District of California ("the San Francisco lawsuit") against Union Sanitary District ("USD"), a customer of Calvert which had purchased a Calvert Mist Scrubber System in 1985. Less than one month later, on June 6, 1988, Calvert filed a complaint against Quad in San Diego. Calvert there alleged that Quad informed Calvert's customers of the San Francisco lawsuit and threatened them with similar actions unless they ceased using Calvert's products. Calvert's San Diego action sought a declaratory judgment of patent invalidity and non-infringement, an order enjoining the San Francisco lawsuit until resolution of the declaratory judgment action, and other relief pursuant to federal antitrust and state deceptive trade and business practice laws. On July 5, 1988, United States District Judge Gordon Thompson, in the Southern District of California, dismissed Calvert's lawsuit for improper venue.[1] Calvert did not appeal that decision and, instead, promptly filed this action seeking similar relief based on federal and Illinois law.

Calvert now moves for a preliminary injunction seeking (1) to enjoin Quad's first-filed suit in San Francisco, (2) to enjoin Quad from providing further notice of the pending patent lawsuits to Calvert's customers, and (3) to require Quad to furnish pleading and other court documents to those customers already threatened with legal action. Quad moves for transfer of this action to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

The cross-motion to transfer and the request to enjoin the San Francisco lawsuit both concern the proper forum to adjudicate Quad's patent claim. We determine that this court is not the proper forum and we grant Quad's cross-motion for transfer.

*Injunction Against the First–Filed Suit*

We determine first whether Calvert would be entitled to an injunction staying the San Francisco lawsuit since a concurrent action there affects Quad's cross-motion for transfer. An injunction would be warranted if Calvert's declaratory judgment action here involves the same issues presented in the San Francisco lawsuit and this action has priority. Quad claims that its action should receive priority since it was the first one filed. Calvert asserts priority based on the fact that the San Francisco lawsuit is against one of its customers and that it is the real party in interest in that lawsuit.

The complicated venue and priority problems that arise from related patent infringement actions in different jurisdictions was addressed by the Supreme Court in *Kerotest Mfg. Co. v. C–O–Two Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). There, a manufacturer brought a declaratory judgment action against a patentee in Delaware and sought to enjoin a prior lawsuit in Illinois by the patentee against a customer of the manufacturer. The district court denied the injunction and the Court affirmed:

> The manufacturer who is charged with infringing a patent cannot stretch the Federal Declaratory Judgments Act to give him a paramount right to choose the forum for trying out questions of infringement and validity. He is given an equal start in the race to the courthouse, not a headstart. If he is forehanded, subsequent suits against him by the patentee can within the trial court's discretion be enjoined pending determination of the declaratory judgment suit, and a judgment in his favor bars suits against his customers. If he is anticipated, the court's discretion is broad enough to protect him from harassment of his customers. If the patentee's suit against a customer is brought in a district where the manufacturer cannot be joined as a defendant, the manufacturer may be permitted simultaneously to prosecute a declaratory action against the patentee

---

1. Judge Thompson initially ruled from the bench following a hearing on Quad's motion to dismiss for lack of personal jurisdiction. *See* transcript, Quad's mem. in opp. to prelim. inj., exh. A. In a written memorandum and opinion issued August 29, 1988, Judge Thompson noted that while the court had personal jurisdiction over Quad the Southern District of California was an improper venue for Calvert's antitrust claims. *See A.P.T., Inc. v. Quad Environmental Technologies Corp.*, No. 88–0820–GT(M), slip op. at 6–9 (S.D.Calif.1988).

elsewhere. And if the manufacturer is joined as an unwilling defendant in a *forum non conveniens*, he has available upon an appropriate showing the relief provided by the Section 1404(a) of the Judicial Code.

*Id.* at 185–86, 72 S.Ct. at 222 (footnotes omitted).

█ Although the quoted language appears to lay down a bright line rule for determining the priority between manufacturer and customer actions, the Court itself emphasized that "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Id.* at 183, 72 S.Ct. at 221. Since then federal courts have adhered to the general rule that "as principle of sound judicial administration, the first suit should have priority, 'absent the showing of balance of convenience in favor of the second action,' or unless there are special circumstances which justify giving priority to the second." *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969) (citations omitted).

An exception to the first-filed rule has been applied by some courts giving priority to second-filed declaratory judgment actions by manufacturers when the first-filed action was against "mere customers." *See, e.g., Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735 (1st Cir.1977); *William Gluckin*, 407 F.2d at 178; *P.S.I. Nordick v. Great Tan, Inc.*, 686 F.Supp. 738 (D. Minn. 1987); *Dicar Inc. v. L.E. Sauer Machine Co.*, 530 F.Supp. 1083 (D.N.J.1982); *Williams Gold Refining Co. v. Semi–Alloys, Inc.*, 198 USPQ 100 (W.D.N.Y.1978). As stated by the First Circuit:

> In these circumstances, while we do not say that there should be an inflexible rule, we would recognize a rebuttable presumption that a manufacturer's de-

claratory judgment action, in its home forum, at least if brought no later than promptly after a customer action, should take precedence over a mere customer action in a jurisdiction to which the manufacturer could not be sued.

*Codex*, 553 F.2d at 738 (footnotes omitted).[2]

Underlying the customer lawsuit exception is the realization that the manufacturer of an allegedly infringing device is the real party in interest in a lawsuit against a mere customer. *Codex*, 553 F.2d at 737–38 ("it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products"). Since a decision on the merits of the action between the manufacturer and the patentee will adjudicate completely the patent infringement question, courts give priority to the manufacturer's suit because all the necessary and real parties are before the court. However, where the patentee has a separate interest in litigating against the customer, the "real party in interest" rationale for giving priority to the manufacturer's lawsuit is inapplicable. In these situations courts do not apply the customer suit exception. For example, in *Emerson Electric Co. v. Black & Decker Mfg.*, 606 F.2d 234 (8th Cir.1979), a manufacturer sought to enjoin the patentee's action against Sears, the manufacturer's customer. The district court in that case noted that Sears was a large corporation that would not be deterred from selling infringing devices by a judgment against its supplier, and that the patentee had a special interest in proceeding against Sears, as customer. The appellate court affirmed the denial of a preliminary injunction because the patentee had a reasonable basis for independent maintenance of its first action against the customer. *Id.* 606 F.2d at 241–42.

---

2. Courts formulate the exception in various ways. While the First Circuit in *Codex* recognized a rebuttable presumption in favor of the manufacturer's declaratory judgment action, the Second Circuit in *William Gluckin* presumed priority of the first-filed customer suit unless the balance of convenience tipped in favor of the second forum in light of circumstances of the manufacturer's suit. *See Williams Gold,* 198 USPQ at 102. *See also Hemstreet v. Spiegel, Inc.,* 211 USPQ 598 (N.D.Ill.1978) (recognizing *Codex* rule but requiring a showing of harassment of customers before staying customer suit).

An additional rationale for the customer exception, one present in the facts of *Codex*, is adherence to the statutory patent venue provisions. Under § 1400(b) a patent infringement action can be brought only in the defendant's "home forum." A patentee who sues a mere customer in a district where the manufacturer cannot be joined circumvents the federal venue provision by compelling the manufacturer to intervene in that district. Courts therefore often give priority to the manufacturer's declaratory judgment to satisfy Congress' intent to allow the patent claim to be tried in the real defendant's home forum. *See Ciba–Geigy Corp. v. Minnesota Mining & Mfg.*, 439 F.Supp. 625 (D.R.I.1977).

■ Neither of these concerns are present in this case and we therefore find the customer lawsuit exception inapplicable. First, Quad has a particular interest in bringing suit against USD by virtue of the nature of its patent claim. Since the patent at issue here is a process patent, Calvert's customers are the alleged direct infringers. Quad's patent rights do not extend to the products sold by Calvert and therefore Calvert would be liable only under theories of contributory infringement or active inducement. *See* 35 U.S.C. §§ 271(b) and (c). Whether or not the direct infringers are necessary parties to an action against Calvert, Quad has independent justification for maintaining its own action against USD.

This conclusion finds ample support in the case law. In *Zemel Bros. v. Dewey Electronics Corp.*, 218 USPQ 722 (N.D.N.Y.1982), both parties were manufacturers and distributors of snowmaking equipment for use at ski resorts. Dewey held rights to a patented method for making snow and had brought four separate patent infringement actions against Zemel's customers. Zemel sued for a declaratory judgment that the patent was invalid and not infringed, and sought to enjoin Dewey from proceeding in the customer suits. The court denied Zemel's motion for a preliminary in-

junction, stating that, absent a showing of forum shopping or harassment by Dewey, customer actions based on a method patent should not be enjoined. *Id.* at 724. *See also Williams Gold Refining Co. v. Semi–Alloys, Inc.*, 198 USPQ 100 (W.D.N.Y.1978) (denying motion to enjoin first-filed actions against customer claiming infringement of a method patent because such actions were not against "mere customers"); *Ciba–Geigy Corp. v. Minnesota Mining & Mfg., supra* (customer exception unavailable in suit based upon a combination patent).

Second, there is no concern here that Calvert would be deprived of its home forum. The Northern District of Illinois is not a home forum to Calvert and enjoining the San Francisco lawsuit so that Calvert can maintain its action here would not further the goals behind § 1400(b). *Cf. Cordell Engineering, Inc. v. Picker International, Inc.*, 540 F.Supp. 1316 (D.Mass. 1982) (*Codex* exception inapplicable where neither venue rights nor judicial economy is threatened). We therefore conclude that Calvert is not entitled to an order enjoining Quad from proceeding further in the San Francisco lawsuit, a determination that is relevant to Quad's cross-motion for transfer pursuant to § 1404(a).[3]

*Transfer Under Section 1404(a)*

■ The transfer of venue provision is a federal judicial housekeeping measure and should not be used to narrow a plaintiff's venue privileges. *Van Dusen v. Barrack*, 376 U.S. 612, 642, 84 S.Ct. 805, 822, 11 L.Ed.2d 945 (1964). The burden lies with the moving party to establish that a transfer is justified. "Plaintiff's choice of forum is entitled to deference, and it is defendants' burden to show that another court would better accommodate the parties, witnesses and the interests of justice." *Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736, 742 (N.D.Ill.1981) (quoting *Stinnett v. Third National Bank of Hampden County*, 443 F.Supp. 1014, 1017 (D.Minn.1978)).

Section 1404(a) provides:

---

**3.** We do not rule on Calvert's motion for a preliminary injunction. Calvert may still be entitled to equitable relief if, for example, it can show harassment of its customers. We leave those questions to be decided in the transferee court.

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Pursuant to this provision we must determine whether (1) Calvert's declaratory judgment action could have been brought in the Northern District of California and (2) whether the interests of justice would be served by a transfer to that district.

■ Although this declaratory judgment action involves a claim of patent infringement, it is not the animal identified by Congress in 28 U.S.C. § 1400(b), the special venue provision for patent infringement actions. Section 1400(b) does not control this motion to transfer. *See, e.g., United States Aluminum Corp. v. Kawneer Co.,* 694 F.2d 193, 196 (9th Cir.1982) ("the mere action of transferring [a declaratory judgment action for noninfringement] does not convert it into an action for infringement") (citing *Emerson Electric Co. v. Black and Decker Mfg. Co.,* 606 F.2d 234, 239 (8th Cir.1979)). Instead, this case is governed by the general federal question venue provision in § 1391(b) and (c), *see id.,* which provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in which the claim arose, except as otherwise provided by law.
>
> A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

■ The parties neglect to inform this court whether Quad, a Delaware corporation with its principal place of business in Illinois, is licensed to do business or is doing business in the Northern District of California. However, it is clear that Quad instituted the San Francisco lawsuit and since Calvert here seeks to enjoin that litigation and claims antitrust violations arising from that lawsuit, Calvert's cause of action arose there.

Judge Thompson found that Quad lacked sufficient contacts with the Southern District of California to support venue in that district. Calvert suggests that this finding applies to Northern California, but this argument conflicts directly with Judge Thompson's statement that Quad's lawsuit against USD would provide a basis for Calvert's declaratory judgment action in San Francisco. We agree with this view and conclude that this action could have been brought in the Northern District of California, where Calvert's cause of action arose.

With regard to the convenience factors in the patent dispute, Quad claims that it plans to call as witnesses employees of USD and other engineers living in or nearby San Francisco. It argues against this forum because these witnesses would be inconvenienced by a lawsuit in Illinois. Calvert, however, counters that these witnesses are not necessary to Quad's defense because there is an operating system employing the Calvert Mist Scrubber System at the Knollwood Wastewater Treatment Plant in DuPage County, a plant within this district. Calvert submits declarations by Calvert's president, Dr. Ronald Patterson, and others, who state that the Knollwood system is virtually identical to those purchased by other Calvert customers. Quad does not dispute this fact nor offer any reason why the system used by USD is of particular importance for Calvert's declaratory judgment action.

Although the Knollwood plant would suffice for Calvert's defense in its lawsuit here, the USD system is available for that purpose in San Francisco. Further, the fact remains that the San Francisco lawsuit is now pending, as it was before Calvert filed its action in San Diego. Since Calvert is not entitled to an order enjoining that lawsuit, it will continue to proceed until it is resolved. The San Francisco action involves the same issues raised by Calvert's patent claims here. "As a general proposition, cases should be transferred to the district where related actions are pending." *SEC v. First National Finance Corp.,* 392 F.Supp. 239 (N.D.Ill.1975). Such a transfer

724

will conserve judicial resources and provide for the efficient adjudication of complex litigation due to the possibility of consolidating both discovery and trial. *See, e.g., Rouse Woodstock v. Surety Federal Savings and Loan Ass'n*, 630 F.Supp. 1004, 1012 (N.D.Ill.1983); *Adair v. Hunt International Resources Corp.*, 526 F.Supp. 736, 742 (N.D.Ill.1981). Transfer is even more appropriate where the suit in the other district was the first one filed. *See Rouse Woodstock, supra.*

In light of the possibilities of conserving resources by consolidation with Quad's patent action against USD, we determine that a transfer of this case to the United States District Court for Northern California is appropriate. *See, e.g., Ciba–Geigy, supra* (denying preliminary injunction against customer lawsuit and ordering a transfer of the declaratory judgment action to the district where the customer lawsuit is pending); *Cordell, supra* (same). However, this court is sensitive to the fact that Calvert's antitrust claims involve separate issues and will require testimony of different witnesses. Some of those witnesses—Quad's principals and agents—reside in this district. Although these witnesses are principals of parties to the lawsuit, they may be outside the subpoena power of the California court. *See, e.g., Hecht v. Don Mowry Flexo Parts, Inc.*, 111 F.R.D. 6, 11 (N.D.Ill.186) (Rule 45(e)(1) of the Federal Rules of Civil Procedure limitation on service of subpoena to 100 miles applies to parties as well as non-party witnesses); *Steel, Inc. v. Atchison, Topeka & Santa Fe Ry.*, 41 F.R.D. 337, 339 (D.Kan.1969) (same); 5A Moore's Federal Practice ¶ 45.09 at 45–70 and n. 8 (1986). We therefore condition our ruling that this case be transferred to the Northern District of California on the requirement that Quad make available for trial in California those of its employees who Calvert reasonably believes are necessary to prosecute its claims.

## CONCLUSION

For the reasons stated, we find that Calvert is not entitled to an order enjoining the San Francisco lawsuit and we grant Quad's motion to transfer this case under § 1404(a) to the United States District Court for Northern California. We therefore do not rule on Calvert's motion for preliminary injunction.