**JOSLYN MANUFACTURING CO., Plaintiff,**

v.

**AMERACE CORPORATION, Defendant.**

No. 89 C 5775.

United States District Court,
N.D. Illinois, E.D.

Feb. 6, 1990.

---

Timothy J. Vezeau, Lee N. Abrams, Frank C. Lipuma and Jeffrey C.B. Levine, Mayer Brown & Platt, Chicago, Ill., for plaintiff.

Ronald A. Sandler and Sandra B. Weiss, Jones Day Reavis & Pogue, Chicago, Ill., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Joslyn Manufacturing Co. (Joslyn), owner of U.S. Patent 4,161,012 ('012), High Voltage Protection Apparatus, brought suit on July 27, 1989, against defendant Amerace Corporation (Amerace) claiming that Amerace infringed the '012 patent by manufacturing and selling certain surge arresters (ESA arresters). Amerace now moves to dismiss this complaint under Rule 12(b)(3) of the Federal Rules of Civil Procedure, for improper venue. Alternatively, defendant moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the U.S. District Court for the District of New Jersey. For the reasons stated below, we deny both motions.

### FACTS

Joslyn is a Delaware corporation with its principal place of business in Chicago. Joslyn's parent corporation, Joslyn Corporation, is an Illinois corporation with its principal place of business also in Chicago. Amerace is incorporated in Delaware and has its principal place of business in Parsippany, New Jersey. Amerace's Elastimold Division manufactures ESA surge arresters at a plant in Hacketstown, New Jer-

sey. Another Amerace division, the Stimsonite Division, operates a facility in Niles, Illinois, which is within this district. The Stimsonite Division has no connection with any acts of infringement which plaintiff alleges were committed by Amerace.

Amerace sells the ESA arresters through sales managers and independent manufacturers' representatives. These sales personnel solicit orders and submit these orders to Elastimold. Sales orders are accepted only at Elastimold's Hacketstown plant, and these individuals do not have the authority to accept any orders.

The parties have brought to this court's attention four sets of actions by the defendant which are relevant to the question of proper venue. These actions relate to marketing and sales of ESA arresters by Amerace or its representatives to Illinois Power Company, the City of Naperville Electric District (NED) and Commonwealth Edison Company (Edison).

### Illinois Power Company

Defendant shipped twelve ESA arresters to an Illinois Power facility in LaSalle, Illinois. LaSalle is located within this judicial district. Illinois Power placed the order for the arresters from its main office in Decatur, Illinois, outside of this district. There is no evidence that Amerace, or any of its representatives, solicited Illinois Power employees at the LaSalle facility. Illinois Power's order for these twelve arresters stated that the arresters were to be shipped to the LaSalle facility (Estes dep. exh. 2). According to Elastimold's acknowledgment form the arresters were shipped f.o.b. Elastimold's factory and title and risk of loss were to pass to Illinois Power at the New Jersey factory[1] (Estes dep. exh. 3, Standard Terms and Condi-

tions, at ¶ 2). The same acknowledgment form states that the order was to be shipped to Illinois Power's LaSalle facility (*Id.*, Customer Acknowledgement). There is no evidence of whether or not these arresters were used within this district (Estes dep. at 47).

### Naperville Electric District

In October 1987, and again in October 1988, Amerace sent firm quotations for the sale of ESA arresters and other products to O'Connor, Serra & Associates (O'Connor, Serra), which was responding to NED's invitation for bids. O'Connor, Serra included the ESA quote in its bid to NED (Burridge dep. exhs. 1, 5). Apparently NED did not accept these bids. O'Connor, Serra is an independent manufacturers' representative (O'Connor dep. at 7) and represents approximately 20 companies, including Elastimold. *Id.* at 93. According to the agreement between O'Connor, Serra and Elastimold, O'Connor, Serra has no right or authority to accept an order on behalf of Elastimold. *Id.* at 97–98.

### Commonwealth Edison Company

From early 1988, up to the time this action was filed, O'Connor, Serra called on Edison engineers in Maywood, Illinois, and distributed Elastimold literature concerning the ESA arresters. In addition, Phillips Weidman, Elastimold's midwest regional sales manager, called on Edison in Maywood and left a sample of an ESA arrester with Edison engineers. Mr. Weidman also left promotional literature at Edison (Weidman declaration at ¶ 7). Edison requested that Elastimold modify their ESA arresters to meet Edison's specifications. Representatives of Elastimold and O'Connor, Serra attended several meetings discussing

---

**1.** Amerace's standard terms and conditions contain provisions which expressly reject any inconsistent provisions in a buyer's purchase order (Estes dep. exh. 3, Standard Terms and Conditions, at lines 6–9). Additional provisions ensure contract formation upon a buyer's acceptance and return of Amerace's acknowledgment form or a buyer's acceptance of delivery. *Id.* at lines 9–12. Additionally, this acknowledgment specifies New York law as governing the contract. *Id.* at lines 25–26. Although the par-

ties argue that the contract was formed in Hacketstown or Decatur (Amerace); or LaSalle (Joslyn), neither party cites any case law to support those arguments. Neither does any party argue which state law should govern contract interpretation. Because we do not believe that the technicalities of contract formation should determine venue, *see* section I(B)(1) *infra*, we need not resolve the question of where this contract was formed.

the requested modifications (O'Connor dep. at 24–26). Elastimold subsequently modified the arrester, shipped a modified sample to O'Connor, Serra, who delivered the arrester to Edison. *Id.* at 30. Elastimold representatives, O'Connor, Serra and Edison engineers held subsequent meetings at which they discussed, *inter alia,* the ESA arresters (def. reply, exh. 6–7). However, Amerace never sold any ESA arresters to Edison prior to Joslyn filing this action. Two months later, however, Elastimold supplied O'Connor, Serra with a quotation for Edison, which included the quotation for 191 arresters.

### Other Activities in this District

Amerace held a meeting in December 1988 in this district for manufacturers' representatives. Mr. Weidman attended this meeting and Elastimold's district engineer, a Mr. Dennis Neely, showed a sample of the ESA arrester and delivered a lecture on the product (Weidman declaration at ¶ 9). No sales were made of the ESA arrester and Amerace did not solicit any such sales.

### DISCUSSION

### I. Is Venue in this District Proper?

It is well established that the plaintiff has the burden of establishing proper venue. *See, e.g., Cordis Corp. v. Cardiac Pacemakers, Inc.,* 599 F.2d 1085, 1086, 202 U.S.P.Q. 465, 466 (1st Cir.1979); *Huey Co. v. Plan Hold Corp.,* 211 U.S.P.Q. 888, 890 (N.D.Ill.1980). Venue in an action for patent infringement is governed exclusively by the special patent venue statute, 28 U.S.C. § 1400(b). *Fourco Glass Co. v. Transmirra Prods. Corp.,* 353 U.S. 222, 229, 77 S.Ct. 787, 792, 1 L.Ed.2d 786, 113 U.S.P.Q. 234, 237 (1957); *In re Cordis Corp.,* 769 F.2d 733, 734, 226 U.S.P.Q. 784, 784 (Fed.Cir.), *cert. denied,* 474 U.S. 851,

106 S.Ct. 148, 88 L.Ed.2d 122 (1985). Section 1400(b) states:

Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business.

### A. Where the Defendant Resides

■ The general corporation venue statute, 28 U.S.C. § 1391(c),[2] does not supplement 28 U.S.C. § 1400(b). *Fourco Glass,* 353 U.S. at 229, 77 S.Ct. at 792, 113 U.S. P.Q. at 237. Because a corporation resides in its state of incorporation for the purposes of § 1400(b), *see Brunette Machine Works, Ltd. v. Kockum Industries, Inc.,* 406 U.S. 706, 707 n. 2, 92 S.Ct. 1936, 1937 n. 2, 32 L.Ed.2d 428, 174 U.S.P.Q. 1, 1 n. 2 (1972); *In re Cordis,* 769 F.2d at 735, 226 U.S.P.Q. at 785, and Amerace is incorporated in Delaware, it would appear that venue in this district cannot be justified based on Amerace's residence. However, without citing any authority, Joslyn argues that the recent amendment of § 1391(c) by Pub.L. 100–702, § 1013, 102 Stat. 4642, 4669 (1988) changed the law so that § 1391(c) may now be used to define Amerace's residence. If Joslyn is correct, venue would be proper because Amerace is subject to personal jurisdiction in this district. However, we believe that Joslyn's argument has no merit.

To sustain Joslyn's position, we would have to have a clear indication of congressional intent to change the venue rules for patent infringement actions. *See Fourco Glass,* 353 U.S. at 227, 77 S.Ct. at 790–91, 113 U.S.P.Q. at 236. Although determining congressional intent may be difficult in some cases, *see, e.g.,* Note, *Preliminary Injunctive Relief under the Federal Water Pollution Control Act,* 60 Chi–Kent

---

**2.** Section 1391(c) of Title 28 provides:

(c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an

action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State, and, if there is no such district, the corporation shall be deemed to reside in the district within which it has the most significant contacts.

L.Rev. 123, 146 (1984), we see no such difficulty here. The reason for the change is clear. The change to § 1391(c) was to restrict venue in multidistrict states to the district where a corporation is subject to personal jurisdiction. Previously, venue was proper in any district in a multidistrict state, even if a defendant corporation confined its activities to one district. *See* H.R. No. 889, 100th Cong., 2d Sess. 70, *reprinted in* 1988 U.S.Code Cong. & Ad.News 5982, 6031. Because the congressional history shows no clear intent to change settled law, we conclude that the 1988 amendment of § 1391(c) had no effect on the exclusivity of § 1400(b). Consequently, to justify venue in this district, Joslyn must show that Amerace meets the second test for venue cited in § 1400(b).

### B. *Where the Defendant has Committed Acts of Infringement*

Because the plaintiff has the burden of proof to establish venue, Joslyn must prove both that Amerace had a regular and established place of business in this district *and* that Amerace committed acts of infringement in this district. *Huey,* 211 U.S.P.Q. 890. Amerace does not contest seriously that its facility in Niles meets the "regular and established place of business" prong of the venue test. This is because any corporate division, not necessarily the division accused of infringing the patent, meets the statutory requirement. *Gaddis v. Calgon Corp.,* 449 F.2d 1318, 1320, 171 U.S.P.Q. 729, 730 (5th Cir.1971); *Bourns, Inc. v. Allen–Bradley Co.* 173 U.S.P.Q. 567, 568 (N.D.Ill.1971). *See Digital Equipment Corp. v. Electronic Memories & Magnetics Corp.,* 452 F.Supp. 1262, 1265 n. 7, 200 U.S.P.Q. 448, 451 n. 7 (D.Mass.1978). Consequently we turn to the remaining issue, whether Amerace committed acts of infringement in this district.

For the purpose of establishing venue, acts of infringement are defined by 35 U.S.C. § 271.[3] *See Huey,* 211 U.S.P.Q. at 890. Thus venue would be proper if Joslyn can show that Amerace made, sold or used ESA arresters in this district. There is no question that Amerace manufactured ESA arresters only in New Jersey. Neither has Joslyn introduced any evidence which shows that Amerace used the arresters in this district. *See Union Asbestos & Rubber Co. v. Evans Prods. Co.,* 328 F.2d 949, 951, 140 U.S.P.Q. 634, 635 (7th Cir.1964) (demonstrations are proof of sale, not use). Therefore, we only need determine if Amerace sold ESA arresters in this district.

### 1. *The Consummated Sales Doctrine*

█ Amerace argues that as a matter of law the "consummated sales doctrine" applies to this case. This doctrine follows the technicalities of sales law and holds that a sale occurs when an order is finally accepted by the seller. *See Picker Int'l, Inc. v. Varian Assocs., Inc.,* 661 F.Supp. 347, 349, 2 U.S.P.Q.2d 1964, 1965 (N.D.Ohio 1987). Amerace argues that because all orders were accepted in New Jersey, it sold no ESA arresters in this district and thus committed no acts of infringement here.[4]

The courts of appeals differ on whether or not to follow the "consummated sales doctrine." Several appellate courts follow this doctrine. *See Self v. Fisher Controls Co.,* 566 F.2d 62, 64, 197 U.S.P.Q. 337, 338 (9th Cir.1977) (*per curiam*); *Bulldog Electric Products Co. v. Cole Electric Products Co.,* 134 F.2d 545, 547, 57 U.S.P.Q. 131, 133 (2d Cir.1943) (*dicta*), *petition for mandamus denied,* 322 U.S. 714, 64 S.Ct. 1256, 88 L.Ed. 1556 (1944); *see also Dow Chemical Co. v. Metlon Corp.,* 281 F.2d 292, 294, 126 U.S.P.Q. 158, 159–60 (4th Cir.1960) (insufficient evidence that demonstrations occurred in district to find use by

---

**3.** Section 271 of Title 35 provides in part:
    (a) [W]hoever without authority makes, uses or sells any patented invention ... infringes the patent.
    Subsections 271(b) and 271(c) define liability for active inducement of infringement, and contributory infringement, respectively, neither of which has been alleged by Joslyn.

**4.** As we stated in n. 1 *supra,* we need not resolve where the contract was formed. Because plaintiff has not shown that the contract was formed in this district, we assume for purposes of this motion that the contract was consummated in New Jersey.

defendant). However, the Seventh Circuit has explicitly repudiated that doctrine. *See Union Asbestos*, 328 F.2d at 952, 140 U.S. P.Q. at 636. *See also* Irani, *Jurisdiction and Venue in Patent Cases: Effect of the Federal Circuit on Construction of the Patent Venue Statute*, 69 J.Pat. & Trademark Off.Soc'y 445, 452–53 & nn. 32–33 (1987) (citing cases). With the creation of the Federal Circuit, only decisions of that court are precedent for interpreting § 1400(b). *See Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1573, 223 U.S.P.Q. 465, 470 (Fed.Cir.1984). However, in the absence of a resolution of conflicting appellate court decisions by the Federal Circuit, we look to the prior appellate court opinions.

After considering these appellate opinions, we believe that the "consummated sales doctrine" is not good law. *See* Wydick, *Venue in Actions for Patent Infringement*, 25 Stan.L.Rev. 551, 580–81 (1973). We believe that the Seventh Circuit in *Union Asbestos* convincingly showed that other courts' reliance on *W.S. Tyler Co. v. Ludlow–Saylor Wire Co.*, 236 U.S. 723, 35 S.Ct. 458, 59 L.Ed. 808 (1915), to justify the "consummated sales doctrine," was mistaken. *See Union Asbestos*, 328 F.2d at 951–52, 140 U.S.P.Q. at 635–36. Nor do we believe that the Supreme Court's admonition not to give the venue statute a liberal construction, *see Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264, 81 S.Ct. 557, 560–61, 5 L.Ed.2d 546, 128 U.S.P.Q. 305, 307 (1961), requires adoption of the "consummated sales doctrine." *See Dual Mfg. & Eng'g, Inc. v. Burris Indus., Inc.*, 531 F.2d 1382, 1385, 1388–89, 190 U.S.P.Q. 449, 451, 454 (7th Cir.1976) (stating that the venue statute should not be liberally construed but rejecting the "consummated sales doctrine"). In fact, this court has stated that "the technicalities of sales law should not apply to determining a sale for venue." *Huey*, 211 U.S.P.Q. at 890. Amerace has offered no arguments to justify not following our previous ruling on this issue and consequently we reiterate what we said in *Huey*. *See also In re Cordis*, 769 F.2d at 736–37, 226 U.S.P.Q. at 786 (refusing to find abuse of discretion in lower court's finding of acts of infringement based on continuous solicitation coupled with technical consultations and demonstrations).

## 2. *Did Amerace Sell ESA Arresters in this District?*

■ The rule in *Union Asbestos* is that a completed sale is not necessary to establish venue. Demonstrations of an accused apparatus, coupled with continuous and systematic solicitation of orders within a district, will establish venue. *Union Asbestos*, 328 F.2d at 952, 140 U.S.P.Q. at 636. To make our decision we must look at the totality of facts. *U.S. Environmental Prods., Inc. v. Infilco Degremont, Inc.*, 611 F.Supp. 371, 373, 225 U.S.P.Q. 677, 678 (N.D.Ill.1985); *Huey*, 211 U.S.P.Q. at 890.

Each case is different, but reviewing the cases we can glean some general principles. First, solicitation unaccompanied by any actual sales or demonstrations will not establish venue. *Amperex Elec. Corp. v. Perry*, 168 U.S.P.Q. 615, 616 (7th Cir.1970) (*per curiam*); *Mid–Continent Metal Prods. Co. v. Maxon Premix Burner Co.*, 367 F.2d 818, 820, 151 U.S.P.Q. 441, 442 (7th Cir.1966); *U.S. Environmental Prods.*, 611 F.Supp. at 373, 225 U.S.P.Q. at 677; *Digital Equipment*, 452 F.Supp. at 1266, 200 U.S.P.Q. at 452. Second, one sale is sufficient to establish venue. *Archer Daniels Midland Co. v. Ralston Purina Co.*, 321 F.Supp. 262, 265, 168 U.S.P.Q. 627, 630 (S.D.Ill.1971). *See Rackman v. Texas Instruments, Inc.*, 712 F.Supp. 448, 450, 12 U.S.P.Q.2d 1836, 1838 (S.D.N.Y.1989) (Section 1400(b) does not require more than *de minimus* infringement). Finally, we have held that continuous solicitation by a salesperson, plus display of the product on four or five occasions, will establish venue. *Huey*, 211 U.S.P.Q. at 890.

■ Taking the facts as a whole, we believe that Joslyn has proven sufficient facts to establish venue in this district. First, Amerace sold twelve ESA arresters to Illinois Power, and delivered those arresters to a facility within this district. Delivery of an infringing product satisfies the plaintiff's requirement of showing a sale.

*See Lemelson v. Ampex Corp.*, 372 F.Supp. 708, 713, 181 U.S.P.Q. 313, 316 (N.D.Ill. 1974) (sale includes delivery); *Archer Daniels*, 321 F.Supp. at 266, 168 U.S.P.Q. at 630 ("The delivery of a product pursuant to a sales contract is a vitally important part of that sale."). *But see Bulldog*, 134 F.2d at 547, 57 U.S.P.Q. at 133 (delivery by common carrier not sufficient).

Amerace argues that mere delivery of a device within the district is not a sale if the device is shipped f.o.b. outside the district. However, Amerace simply is returning to the technical sales law to make its argument and we reject that reasoning. *See* § I(B)(1) *supra*. Amerace also argues that *Archer Daniels* stands for the proposition that "a shipment from outside the district 'alone would probably not be sufficient to subject the defendant to venue....' " (def. reply mem. at 6) (citing *Archer Daniels* at 321 F.Supp. at 267, 168 U.S.P.Q. at 631). We disagree. That quote from *Archer Daniels* referred to a specific shipment, where there was no proof that delivery was made in the district prior to the plaintiff filing suit, and the contract did not require the defendant to deliver the product within the district. *Archer Daniels*, 321 F.Supp. at 266 & n. 2, 168 U.S.P.Q. at 631 & n. 2. In this case there is no question that the twelve ESA arresters were delivered to LaSalle prior to Joslyn filing suit, and Illinois Power's purchase order and Elastimold's acknowledgment both specify that the products were to be shipped to LaSalle.

Finally, Amerace contends that it was "just a matter of circumstance" that the arrester order came from LaSalle rather than from some other Illinois Power facility.

Amerace misses the point with this argument. Although Illinois Power requested that the arresters be shipped to LaSalle, Elastimold in fact directed the shipment there. It was not "just a matter of circumstance" that the arresters were delivered to LaSalle. The arresters were shipped to LaSalle as a result of a deliberate agreement between Illinois Power and Amerace. From a viewpoint of the effect of this sale on Joslyn's right to exclude others from selling a device infringing on the '012 claims, the delivery of the ESA arresters, if infringing, could have interfered with Joslyn's rights. *See Lemelson*, 372 F.Supp. at 713, 181 U.S.P.Q. at 316 ("test is one of 'sufficient impairment' of the patentee's rights"). Similarly, it matters little if title to the arresters passed to Illinois Power in New Jersey. The Elastimold shipment of the arresters to LaSalle interfered with Joslyn's rights to exclude others from selling arresters in the district, regardless of where title technically passed to the buyer.

In addition to this sale to Illinois Power, we also consider Amerace's sales efforts to NED and Edison. We do not believe it would be proper to characterize Amerace's marketing activities as continuous and systematic. Elastimold sent O'Connor, Serra two quotations for forwarding to NED, once each year. The contacts with Edison took place over a period of two years, with contacts being infrequent. While Amerace's marketing efforts standing alone might not be sufficient to establish venue in this district, combining these actions with the delivery of the twelve arresters in this district shows sufficient sales activity by Amerace to support venue here.[5] Con-

---

**5.** Citing *Hunter v. FMC Corp.*, 190 U.S.P.Q. 66, 69 (N.D.Ill.1975), Amerace argues that it is clear that acts of independent sales representatives (O'Connor, Serra in this case) cannot constitute selling by Amerace. *Hunter* cited *Knapp–Monarch Co. v. Casco Products Corp.*, 342 F.2d 622, 145 U.S.P.Q. 1 (7th Cir.), *cert. denied*, 382 U.S. 828, 86 S.Ct. 64, 15 L.Ed.2d 73 (1965), for that proposition. However, the discussion in *Knapp–Monarch* concerning independent sales representatives addressed the question of whether the defendant maintained a regular place of business in the district. *Id.* at 625, 145 U.S.P.Q. at 3. The defendant had admitted acts of infringement. *Id.* at 624, 145 U.S.P.Q. at 3.

Because we find an act of infringement in the delivery of the twelve ESA arresters to Illinois Power at LaSalle, coupled with Amerace's marketing efforts, we need not decide if the acts of O'Connor, Serra can be imputed to Amerace for the purposes of finding an act of direct infringement. Further, because Joslyn has alleged only acts of direct infringement by Amerace, we need not decide if venue is proper based on Amerace actively inducing infringement in this district by aiding and abetting any sales by O'Connor, Serra.

sequently, Amerace's motion to dismiss this action for improper venue must be denied.

## II. *Transfer of Venue*

As an alternative, Amerace moved pursuant to 28 U.S.C. § 1404(a) [6] to transfer this case to the District Court for the District of New Jersey. The burden is on Amerace to justify the transfer and Joslyn's choice of forum is entitled to deference. *A.P.T., Inc. v. Quad Environmental Technologies Corp.*, 698 F.Supp. 718, 722, 9 U.S.P.Q.2d 1396, 1399 (N.D.Ill.1988). Amerace must show clearly that the balance of conveniences weigh strongly in its favor. *See Huey*, 211 U.S.P.Q. at 891.

There is no question that this action could have been brought in the District of New Jersey, where Elastimold's manufacturing plant is located (permanent place of business), and where Elastimold makes the ESA arresters. Consequently we need only determine whether the balancing of conveniences justifies transferring this action.

■ The decision to transfer a case is within the discretion of the court. *See id.* To make this determination, we look at the location of the documents and witnesses, the cost to obtain the presence of witnesses and the cost and convenience of practical factors bearing on the trial. *Id.*

### A. *Convenience of the Parties*

■ No one questions that a New Jersey forum is more convenient to Amerace. The Elastimold Division manufactures the ESA arresters within that district and substantially all of Amerace's records concerning manufacturing, marketing and development of the ESA arresters are located there (Stevens decl. at ¶ 6). On the other hand, Joslyn has its corporate offices, its principal place of business and manufacturing and design facilities located in Chicago. Most of Joslyn's records relating to the '012 patent also are located in Chicago. Thus it appears that Joslyn would be incon-

venienced by transferring this action to New Jersey as much as Amerace would be convenienced by the requested transfer. Motions to transfer are not granted if they merely shift the inconvenience from one party to another. *Ballard Medical Prods. v. Concord Laboratories, Inc.*, 700 F.Supp. 796, 801 (D.Del.1988); *William Sklaroff Design Assocs., Inc. v. Metcor Mfg., Inc.*, 224 U.S.P.Q. 769, 773 (N.D.Ill.1984).

■ Defendant cites a number of cases from this district where the court overrode the plaintiff's choice of forum and transferred the action to a more convenient forum. In these cases, however, the plaintiffs did not have the kind of contacts with the transferor forum as Joslyn has with this district. *See Emhart Indus., Inc. v. Universal Instruments Corp.*, No. 88 C 4960, 1988 WL 121538 (N.D.Ill. Nov. 3, 1988) (plaintiff Connecticut corporation with principal place of business in Connecticut); *B.F. Goodrich Co. v. Goodyear Tire & Rubber Co.*, No. 86 C 3145, 1987 WL 6295 (N.D.Ill. Feb. 3, 1987) (plaintiff incorporated in New York with headquarters in Ohio); *Phillips Petroleum Co. v. El Paso Prods. Co.*, No. 84 C 2029 (N.D.Ill. July 25, 1984) (plaintiffs incorporated in New York and Pennsylvania, respectively, with principal places of business in those states); *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F.Supp. 1185, 1187 (N.D.Ill.1983) (plaintiff's offices in Wisconsin); *Coats Co. v. Vulcan Equipment Co.*, 459 F.Supp. 654, 655–56 & n. 2 (N.D.Ill.1978) (plaintiff incorporated in Iowa, with principal place of business in Tennessee); *AMP, Inc. v. Burndy, Inc.*, 340 F.Supp. 21, 24, 172 U.S.P.Q. 389, 391 (N.D.Ill.1971) (plaintiff New Jersey corporation, with principal place of business in Pennsylvania). Consequently, transferring the cases to these defendants' home forums did more than simply shift the inconvenience from one party to another. The transfers in those cases clearly resulted in greater conveniences to the parties.

---

**6.** Section 1404(a) of Title 28 states:

> For the convenience of the parties and the witnesses, in the interest of justice, a district

court may transfer a civil action to any other district or division where it might have been brought.

A case more analogous to this action is *Huey.* In *Huey* the plaintiff was incorporated in Illinois, had its principal place of business within the district, and had its manufacturing, design, engineering and research facilities in this district. *Huey,* 211 U.S.P.Q. at 891. Under those circumstances we held that the balance of conveniences did not clearly weigh in favor of a transfer. *Id.* We also noted the inapplicability of the facts of *AMP* to a case such as *Huey.* We believe that reasoning is applicable here, and consequently we believe that Amerace has not clearly shown that transfer to New Jersey would be for the convenience of both parties.

### B. *Convenience of the Witnesses*

Amerace states that most of its principal witnesses on the issues of patent validity, infringement and damages reside in New Jersey, and that a New Jersey forum would be more convenient for those witnesses than an Illinois forum. Likewise, Joslyn claims that its witnesses on these issues reside and work in this district. Joslyn also asserts that several former employees of RTE Corporation, which is located in Milwaukee, *may* be required as witnesses on unspecified issues. Again, this case is unlike cases such as *B.F. Goodrich* and *William Sklaroff,* where few if any of the witnesses were located in the transferor forum. Thus we believe that transferring this case to New Jersey simply would shift the inconvenience from Amerace's witnesses to Joslyn's witnesses.

### C. *Interest of Justice*

Amerace next contends that the interest of justice requires transfer of this action to New Jersey to avoid a multiplicity of litigation. Amerace notes that it filed a declaratory judgment action in New Jersey seeking a declaration that the '012 patent is invalid, unenforceable and not infringed, *see Amerace Corp. v. Joslyn Corp.,* No. 89–3471 (D.N.J. filed Aug. 15, 1989), and consolidation of these actions would prevent waste and duplication. However, Joslyn correctly points out that Amerace filed the New Jersey action *after* Joslyn filed this action, and that Amerace has agreed to dismiss the declaratory judgment action if we deny Amerace's motion. *See* August 29, 1989 letter from Amerace's New Jersey counsel to Joslyn's counsel.

We see no merit in Amerace's argument. Amerace is responsible for the multiplicity of suits; it filed two weeks after Joslyn. Absent other factors, Joslyn's first-filed suit must be given priority. *See Erbamont, Inc. v. Cetus Corp.,* 720 F.Supp. 387, 396, 12 U.S.P.Q.2d 1344, 1352 (D.Del.1989); *Ballard,* 700 F.Supp. at 801. One such factor where the first-filed suit is against a customer and the declaratory judgment action is against the manufacturer. *See Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081, 12 U.S.P.Q.2d 1997, 1999 (Fed. Cir.1989) (discussing stay of first filed suit); *A.P.T.,* 698 F.Supp. at 721–22, 9 U.S.P.Q.2d at 1398 (same). However, this factor is not present as Amerace is the manufacturer, not a mere customer. Neither has Amerace introduced sufficient evidence to show that Joslyn's choice of forum is due solely to forum shopping. *See Kahn,* 889 F.2d at 108, 12 U.S.P.Q.2d at 1999.

Amerace cites *Coats Co.* as supporting its position that transfer would be in the interest of justice.[7] In *Coats* the court specifically found that resolving the first-filed infringement action "would not necessarily result in the final determination of every issue raised in the declaratory judgment action." 459 F.Supp. at 657. Amerace has introduced no evidence that the issues of invalidity, infringement and unen-

---

7. Amerace also cites *Codex Corp. v. Milgo Electronic Corp.,* 553 F.2d 735, 194 U.S.P.Q. 49 (1st Cir.), *cert. denied,* 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977), to support its position that transfer and consolidation of this action in New Jersey "clearly would be in the interest of justice." However, Amerace fails to mention in its brief that *Codex* involved the customer-lawsuit exception to the first-filed rule, *see id.* 553 F.2d at 738, 194 U.S.P.Q. 50, an exception not relevant to this action. *See supra* p. 1227.

forceability cannot be resolved in this action.

Finally, Amerace argues that the preferred forum is the "center of the accused activities." *See S.C. Johnson,* 571 F.Supp. at 1187–88. However, in the cases cited by Amerace, where the "center of the accused activity" was important, the plaintiff was not a resident of the transferor forum, nor did it have its principal place of business in that forum. *See* cases cited in section II(A) *supra.* Nor should this argument be sufficient to overcome the other factors. If it were, defendants often would be entitled to transfer the case. This would overrule plaintiff's choice—something we do not believe was meant by Congress.

In summary, we believe that Amerace has not clearly shown that the convenience of the parties, or the witnesses, weighs strongly in favor of a New Jersey forum. In fact, we believe that the convenience factor is a draw for both the parties and the witnesses. Moving this action to New Jersey will increase the convenience for Amerace, but increase the inconvenience for Joslyn. Similarly, we do not believe that the multiplicity-of-suits argument, created by Amerace, clearly weighs in favor of transfer to New Jersey. Finally, we do not believe that the "center of the accused activity" argument is relevant to this case.

## CONCLUSION

For the reasons stated, we deny Amerace's motion to dismiss for improper venue and deny its motion to transfer this action to the District of New Jersey.